1
2
3
4
5

Norma Rivera
4734 Rancho Camino Court
Las Vegas, Nevada [89129]
702-275-8158

☑ FILED          ___ RECEIVED
___ ENTERED      ___ SERVED ON
          COUNSEL/PARTIES OF RECORD

JUL 1 4 2015

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

6
7
8          **IN THE UNITED STATES DISTRICT COURT**
9              **DISTRICT OF NEVADA**
10
11   NORMA RIVERA                          )   C   **2:15-cv-01332-JAD-GWF**
12                                         )
                  *Plaintiff*             )   **VERIFIED COMPLAINT FOR**
13                                         )   **DAMAGES**
14   SHELLPOINT MORTGAGE                   )
15   SERVICING                             )
16                                         )
17                  *Defendant*            )
18                                         )
19   _____ )   **JURY TRIAL DEMANDED**
20
21   **COMES NOW**, Norma Rivera, complaining of the Defendant's as follows:
22
23                    **INTRODUCTION**
24   1.  This action is an action brought by the Plaintiff for violation of 15 U.S.C.  Fair
25   Debt Collection Practices Act, 15 U.S.C. §1692.
26
27   **I.**                    **THE PARTIES**
28

                    **COMPLAINT FOR DAMAGES**
                              1

2.   Plaintiff Norma Rivera is now and at all times relevant to this action as a "state" Citizens of Nevada.  Plaintiff is a "consumer" as that term is defined within 15 U.S.C. §1692a (3).

3.   Defendant SHELLPOINT MORTGAGE SERVICING "Debt Collector" is a limited liability corporation formed under the laws of the state of South Carolina. Defendant has a principal place of business located at 55 Beattie Place, Suite 110, Greenville, South Carolina. 29601.  Defendant SHELLPOINT MORTGAGE SERVICING, is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

## II.                    JURISDICTION AND VENUE

5. The US District Court District of Nevada has jurisdiction pursuant to 15 U.S.C. §1692 *et, al*, and the court has concurrent jurisdiction over Plaintiffs tort state claims. Venue is proper as the occurrences which give rise to this action took place within the state of  Nevada.  Therefore venue is proper within this court

## III.                    FACTUAL ALLEGATIONS

6. Plaintiff brings this action regarding the Defendant, in their continued attempts to collect an alleged debt Defendants claims are owed them. Plaintiff is without knowledge of the alleged debt Defendant claim is owed.

**COMPLAINT FOR DAMAGES**

7.  On or about February 18, 2015, Plaintiff received a  notice of breach and default by Defendant SHELLPOINT MORTGAGE SERVICING (*see* attached "Exhibit A"). The dunning notice makes numerous claims by Defendant regarding an alleged loan.  Plaintiff is without specific knowledge and evidence that supports the Defendant claims and allegations.

8.  On or about June 10, 2015, Plaintiff served upon SHELLPOINT MORTGAGE SERVICING a Notice of Validation of Debt pursuant to 15 USC§1692, FDCPA (*see* attached exhibit B).  The notice required the Defendant " debt collector" to validate / verify their alleged debt pursuant to 15 USC§1692g, which states that Defendant must respond with:

(a)  Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

 (1) the amount of the debt;

 (2) the name of the creditor to whom the debt is owed;

 (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

**COMPLAINT FOR DAMAGES**

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor According to the General Accounting Practices, SHELLPOINT MORTGAGE SERVICING must be exact as to how much the alleged loan was.

9. On or about June 29, 2015 Plaintiff received a response from the Defendant SHELLPOINT MORTGAGE SERVICING that showed an assignment from GATEWAY BANK,, FSB to BANK OF NEW YORK MELLON, a copy of the original note with GATEWAY BANK. There is nothing in the response that indicates that Defendant is a creditor, or have provided any documentation that Plaintiff owes Defendant a debt. (*see*, attached "EXHIBIT C")

10. Defendant received an assignment of the mortgage after the debt was in default after the debt was in default. According to U.S.C. Title 15, Section §1692a(4)" The term "Creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that **he receives an assignment or transfer of a debt** in

**COMPLAINT FOR DAMAGES**
4

default solely for the purpose of facilitating collection of such debt for another."

Debt collectors are not allowed to take property.

11. SHELLPOINT MORTGAGE SERVICING has received an assignment of a debt allegedly owed by Plaintiff. This assignment was made from GATEWAY BANK TO BANK OF NEW YORK MELLON on 6/24/2011, and recorded at the county recorders office. This assignment was created well after the debt was in default, and well after the date allowed by the pooling servicing agreement of the trust. This debt has been securitized and entered into a Mortgage Pass Through Certificate Alternative Loan Trust, 2006-OA14,  whose address is 101 Barklay St. 4w, New York, NY 10286. This trust was closed in 2006. According to the purchase service agreement of this trust, once the trust is closed, there can be no more loans added or subtracted from the trust, no assignments, no more transfers, period. According to 26 U.S.C. § 860D, a Remic trust only has 90 days to move loans in and out of the trust: 26 U.S.C. REMIC defined:

(a) General rule For purposes of this title, the terms "real estate mortgage investment conduit" and "REMIC" mean any entity - (1) to which an election to be treated as a REMIC applies for the taxable year and all prior taxable years, (2) all of the interests in which are regular interests or residual interests, (3) which has 1 (and only 1) class of residual interests (and all distributions, if any, with respect to such interests are pro rata), (4) **as of the close of the 3rd month beginning after the startup day and at all times thereafter,** substantially all of the assets of

which consist of qualified mortgages and permitted investments, (5) which has a

taxable year which is a calendar year, and (6) with respect to which there are

reasonable arrangements designed to ensure that - (A) residual interests in such

entity are not held by disqualified organizations (as defined in section 860E(e)(5)),

and (B) information necessary for the application of section 860E(e) will be made

available by the entity. In the case of a qualified liquidation (as defined in section

860F(a)(4)(A), paragraph (4) shall not apply during the liquidation period (as

defined in section 860F(a)(4)(B). (b) Election (1) In general An entity (otherwise

meeting the requirements of subsection (a) may elect to be treated as a REMIC for

its 1st taxable year. Such an election shall be made on its return for such 1st

taxable year. Except as provided in paragraph (2), such an election shall apply to

the taxable year for which made and all subsequent taxable years. (2) Termination

(A) In general If any entity ceases to be a REMIC at any time during the taxable

year, such entity shall not be treated as a REMIC for such taxable year or any

succeeding taxable year. (B) Inadvertent terminations If - (i) an entity ceases to be

a REMIC, (ii) the Secretary determines that such cessation was inadvertent, (iii) no

later than a reasonable time after the discovery of the event resulting in such

cessation, steps are taken so that such entity is once more a REMIC, and (iv) such

entity, and each person holding an interest in such entity at any time during the

period specified pursuant to this subsection, agrees to make such adjustments

(consistent with the treatment of such entity as a REMIC or a C corporation) as

may be required by the Secretary with respect to such period, then,

notwithstanding such terminating event, such entity shall be treated as continuing

to be a REMIC (or such cessation shall be disregarded for purposes of

subparagraph (A) whichever the Secretary determines to be appropriate. No where

in the PSA (Pool Servicing Agreement), or the above definition does it allow for

the ongoing removal of assets after the closing of the Remic.

   How can an assignment be valid if it was made years after the trust was closed?

And how can anyone, including BANK OF NEW YORK MELLON, or any of the

Defendants attempt to collect on a debt that has already been sold to a Remic Tust?

Once the loan is sold, the note holder is now the Remic Trust. The Defendant has

no longer can claim that they can foreclose on Plaintiffs Property, or file

documents threatening to foreclose on Plaintiffs Property, only the Remic Trust

can. Plaintiff will bring up these inquiries during the discovery phase of this

lawsuit.

12.  The above detailed conduct by the Defendant has more to do with their

deceptive and illegal acts in their attempt to collect the alleged debt, as opposed to

any legitimacy of their alleged debt. The FDCPA, relates to the Defendants even if

they were collecting a legitimate debt.  Plaintiff alleges for the record that the

Defendants are not a creditor, lenders, nor mortgagees, neither did the Defendants

provide any credit, or services to Plaintiffs.  Nonetheless, the Defendants are a

**COMPLAINT FOR DAMAGES**

'debt collector" pursuant to 15 U.S.C. §1692a(6). Plaintiff allege the FDCPA states in part;

The term "**debt collector**" means any person who used any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. **Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, or used any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.** For the purpose of section 808(6), such term also includes any person who used any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

13.  Plaintiff therefore seeks damages as a result of Defendant(s) acts.


**IV.**            **FIRST CAUSE OF ACTION**
**VIOLATION OF U.S.C. §1692, FAIR DEBT COLLECTIONS PRACTICES   ACT**


14.  Paragraphs 1-13 are re-alleged as though fully set out herein.


**COMPLAINT FOR DAMAGES**

15.   All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

16.   Plaintiff is a "consumers" as defined in 15 U.S.C. §1692a(3).  Defendant is a debt collector as defined in 15 U.S.C. §1692a(6). Defendant was attempting to collect a debt used for "household purpose" as defined by 15 U.S.C. §1692a(5).

17.   Plaintiff served Defendant with a Notice of Dispute in compliance with 15 U.S.C. §1692g. 15 U.S.C. §1692g requires Defendant to provide Plaintiff with verification of the alleged debt once received. 15 U.S.C. §1692g(5)(b) requires Defendants to cease all collection activity until the debt collector obtains *verification* of the alleged debt.  Defendant has failed to provide one scintilla of proof of their alleged debt. Defendant continues to make attempts at collection of the alleged debt through threats to sell Plaintiffs Property.

18.   Defendant has violated the FDCPA, and caused damages to Plaintiff by their failure to comply with the Act.  Defendant's violations include, but are not limited to the following:

   a.   Defendant has violated 15 U.S.C. §1692d of the FDCPA by engaging in conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of an alleged debt and;

**COMPLAINT FOR DAMAGES**

b.  Defendant has violated 15 U.S.C. §1692(j) "by using unfair or unconscionably means in connection with the collection of an alleged debt;

c.  Defendant has violated 15 U.S.C. §1692(i), "Any contest over real property must be brought before a judicial court as a judicial action". This means there can be no "non judicial foreclosure by a debt collector".

d.  Defendant has violated 15 U.S.C. §1692f(1) "Attempt to collect any amount not authorized by the agreement creating the debt or permitted by law".

19.  Specifically Defendant knew it was not entitled to collect on the non-existent debt.

20.  Defendant was fully aware that they were/are unable to provide a performance contract executed by Plaintiffs whereby Plaintiff is obligated to Defendant.

21.  Defendant alleges by operation defendant of, execution and filing of the "assignment" Plaintiff became obligated to defendant, and defendant by in large became Plaintiffs creditor.

32.  The Assignment in part alleges "value received" was given to MERS and that both alleged Note and Deed of Trust (Mortgage) was transferred and negotiated to the defendant.

**COMPLAINT FOR DAMAGES**

33. Plaintiff seeks judicial determinations as to whether the recorded Assignment of Deed of Trust (Mortgage) and the alleged Note executed by MERS conferred any rights, title and interest in the Plaintiff's subject property. Additionally, Plaintiff request the court declare whether "value received" as stated in the assignment is actually monetary or non- monetary in nature of "consideration" and or "valuable consideration".

34. Plaintiff is also entitled to trial and discovery, to afford defendants the opportunity to prove that MERS is named on the Note, take payments on the alleged debt in any manner, whether MERS ever had possession of any alleged Note, and proof defendant paid MERS any monetary value for such alleged debt.

35. Plaintiff is unable to ascertain the validity of defendants alleged debt and the amounts they claim is due and owing. Plaintiff denies any loan was received by the alleged original creditor and is entitled to discovery and trial to determine is ever such a loan was funded to the Plaintiffs. Furthermore, Plaintiff is unable to determine the validity of defendant purported assignment of the alleged debt for the following reasons:

    1.   Firstly Plaintiff is not familiar and or otherwise is not provided with the definition of   the term "value received" as is the verbiage used on the assignment to defendant.

    2.   Secondly, it is Plaintiff understanding that the term "value received" can be non – monetary in nature.

<div align="center">COMPLAINT FOR DAMAGES</div>
<div align="center">11</div>

3.  Thirdly, Plaintiff upon the information and belief understands that MERS is not named on the alleged Note, and never has possession of any alleged Notes. MERS could not have transferred, nor received any consideration, valuable consideration, value received as alleged in this assignment;

36.  Plaintiff is otherwise unable to ascertain the validity of Defendants' alleged debt and the amounts they claim is due and owing.  Plaintiff denies any loan was received by the alleged original creditor and is entitled to discovery and trial to determine is ever such a loan was funded to the Plaintiff.

37.  Specifically Defendant knew they were not entitled to collect on the non-existent debt.

38.  Defendant was fully aware that they were unable to provide a performance contract executed by Plaintiff, whereby Plaintiff is obligated to Defendant.

39. Defendant is therefore liable unto Plaintiff pursuant to 15 U.S.C. §1692(k) in the amount of $1,000 plus punitive, consequential, treble damages, and actual damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff request the following relief to be awarded for each Cause of Action:

a. For Declaratory Relief, including the following Decrees of this Court that:

b. Plaintiffs requests a determination of the court to determine if Defendant in fact is "debt collector" and or "creditor" as defined in Defendants communications, or the act itself.

c. That Defendant is prohibited from sending any additional notices making demands of Plaintiff regarding such alleged debt;

d. Actual, and statutory damages in an amount determined at trial, and within the jurisdictional amount of this court;

e. Awarding Plaintiffs any pre- judgment and post – judgment interest as may be allowed under the law.

f. and any other such damages deemed appropriate by the court.

**Jury trial is demanded.**

Dated: _7/14/15_

By: _____

Norma Rivera, *Consumer Plaintiff*

# EXHIBIT "A"

## DUNNING NOTICE FROM DEFENDANT

Inst #: 20150219-0001782
Fees: $222.00
N/C Fee: $25.00
02/19/2015 01:22:47 PM
Receipt #: 2319865
Requestor:
ORDM · TSG
Recorded By: ANI   Pgs: 6
DEBBIE CONWAY
CLARK COUNTY RECORDER

APN: 138-05-110-019
WHEN RECORDED MAIL TO:
New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing
55 BEATTIE PLACE
SUITE 110 MAIL STOP 005
GREENVILLE, SC 29601

---

TS No.: 13-50796 TSG Order No.: 02-13021133
The undersigned hereby affirms that there is no Social Security number contained in this document.

## NOTICE OF BREACH AND DEFAULT AND OF ELECTION TO CAUSE SELL OF REAL PROPERTY UNDER DEED OF TRUST

NOTICE IS HEREBY GIVEN THAT: Old Republic Default Management Services, a Division of Old Republic National Title Insurance Company, P.O. Box 250, Orange, CA 92856-6250 is either the original Trustee, the duly appointed substituted or acting as agent for the trustee or beneficiary under a Deed of Trust dated 8/2/2006, executed by CRISPIN T. RIVERA AND NORMA C. RIVERA, HUSBAND AND WIFE AS JOINT TENANTS, as trustor in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GATEWAY BANK, FSB, A FEDERAL SAVINGS BANK, recorded 8/11/2006, under instrument no. 20060811-0000570 , of Official Records in the office of the County recorder of Clark, County, Nevada securing, among other obligations.

The property address is purported to be:  4734 RANCHO CAMINO COURT, LAS VEGAS, NV 89129

Included among these obligations is one Note for the Original sum of $584,000.00.  The beneficial interest under such Deed of Trust and the obligations secured hereby are presently held by New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing  AS SERVICER FOR THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA14, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA14 as the current beneficiary or its agent; and a breach of, and/or default in the obligations for which such Deed of Trust is security has occurred or that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 3/1/2010 plus late charges, and all subsequent installments of principal, interest, plus impounds and/or advances and late charges that become payable.

That by reason thereof the present Beneficiary under such Deed of Trust has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.



T.S. No.: 13-50796

# NOTICE

You may have the right to cure the default hereon and reinstate the one obligation secured by such Deed of Trust above described. Section NRS 107.080 permits certain defaults to be cured upon the Payment of the amounts required by that statutory section without requiring payment of that portion of principal and interest which would not be due had no default occurred. Where reinstatement is possible, if the default is not cured and mailing of this Notice to Trustor or Trustor's successor in interest, the right of reinstatement will terminate and the property may thereafter be sold. The Trustor may have the right to bring a court action to assert the nonexistence of a default or any other defense of Trustor to acceleration and Sale.

**To determine if reinstatement is possible and the amount, if any, to cure the default, contact: Loss Mitigation**

**New Penn Financial, LLC d/b/a**
**Shellpoint Mortgage Servicing**
**55 BEATTIE PLACE**
**SUITE 110 MAIL STOP 005**
**GREENVILLE, SC 29601**
**Attn: Foreclosure Department**

**Old Republic National Title Insurance Company**
**PO Box 250**
**Orange, California 92856-6250**
**(866) 263-5802**

Dated: 2\18\15

**Old Republic National Title Insurance Company, as Trustee and/or as Agent for the beneficiary**

By:_____
**Dalaysia Ramirez , Assistant Secretary**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

**State of California }ss**
**County of Orange}**

On 2/18/15 before me, **Carrisa Bey** Notary Public, personally appeared **Dalaysia Ramirez** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)
**Carrisa Bey**

CARRISA BEY
Commission # 2086448
Notary Public - California
Orange County
My Comm. Expires Oct 17, 2018

"We are attempting to collect a debt, and any information we obtain will be used for that purpose."

mini miranda warning is usc. 1692(e)(11)

## NEVADA DECLARATION OF COMPLIANCE
### NRS Chapter 107, as revised by SB 321 section 11 subsection 6

Borrower(s):              CRISPIN T. RIVERA and NORMA C. RIVERA
Mortgage Servicer:     New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing
Property Address:      4734 RANCHO CAMINO COURT
13-50796                    LAS VEGAS, NV 89129

The undersigned mortgage servicer representative declares as follows (Check ONE):

☑  The mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by NRS Chapter 107, as revised by SB 321 section 11 subsection 2.  Thirty days, or more, have passed since the initial contact was made.

☐  The mortgage servicer tried with due diligence but was unable to contact the borrower as required by NRS Chapter 107, as revised by SB 321 section 11 subsection 5.  Thirty days, or more, have passed since these due diligence efforts were satisfied.

☐  The mortgage servicer was not required to comply with NRS Chapter 107, as revised by SB 321 section 11, because the individual does not meet the definition of a "borrower" under NRS Chapter 107 as revised by SB 321 section 3.

☐  The mortgage servicer was not required to comply with NRS Chapter 107, as revised by SB 321 section 11, because it is a financial institution that, during its immediately preceding annual reporting period, as established with its primary regulator, has foreclosed on 100 or fewer owner-occupied real properties located in the State of Nevada.

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

Executed on _Jan. 23,_ ____ 2015 at _Houston_ , _Texas_ ____

> New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing  AS SERVICER FOR THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA14, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA14
>
> By: _Linda Jacobs, Fulfillment Specialist_



T.S. No.: 13-50796
APN: 138-05-110-019

## AFFIDAVIT OF AUTHORITY IN SUPPORT OF NOTICE OF DEFAULT AND ELECTION TO SELL
### [NRS § 107.080]

Property Owners:
CRISPIN T. RIVERA and NORMA C. RIVERA

Trustee Address:
Old Republic Default Management Services, a Division of Old Republic National Title Insurance Company, P.O. Box 250, Orange, CA 92856-6250
500 City Parkway West, Suite 200
Orange, CA 92868

Property Address:
4734 RANCHO CAMINO COURT
LAS VEGAS, NV 89129

Deed of Trust Document Instrument Number
8/11/2006 20060811-0000570 -- --

The affiant, _Matthew Windon_ , being first duly sworn upon oath, based on personal knowledge which the affiant acquired through a review of business records kept in the regular course of business of the beneficiary, its successor in interest, or the servicer of the obligation or debt secured by the above-referenced deed of trust (hereinafter "Deed of Trust") in accordance with the standards set forth in Nevada Revised Statutes § 51.135, and under penalty of perjury, attests that I am an authorized representative of the beneficiary, its successor in interest, or the servicer of the obligation or debt secured by the Deed of Trust, which is described in the Notice of Default and Election to Sell to which this affidavit is attached.

I further attest, based on personal knowledge, and under penalty of perjury, to the following information, as required by NRS 107.080(2)(c):

1.     The full name and business address of the current trustee or the current trustee's personal representative or assignee is:

Old Republic Default Management Services, a Division of Old Republic National Title Insurance Company, P.O. Box 250, Orange, CA 92856-6250

        Full Name

500 City Parkway West, Suite 200
Orange, CA 92868

Street, City, County, State, Zip

The full name and business address of the current holder of the note secured by the Deed of Trust is:

New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing AS SERVICER FOR THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA14, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA14

55 BEATTIE PLACE
SUITE 110 MAIL STOP 005
GREENVILLE, SC 29601

    Full Name                  Street, City, County, State, Zip

The full name and business address of the current beneficiary of record of the Deed of Trust is:

New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing AS SERVICER FOR THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA14, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA14

55 BEATTIE PLACE
SUITE 110 MAIL STOP 005
GREENVILLE, SC 29601

    Full Name                  Street, City, County, State, Zip

The full name and business address of the current servicer of the obligation or debt secured by the Deed of Trust is:

New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing

55 BEATTIE PLACE
SUITE 110 MAIL STOP 005
GREENVILLE, SC 29601

    Full Name                  Street, City, County, State, Zip

2.    The beneficiary, its successor in interest, or the trustee of the Deed of Trust is: (a) in actual or constructive possession of the Note secured by the Deed of Trust; or (b) entitled to enforce the obligation or debt secured by the Deed of Trust because the beneficiary, its successor in interest, or the trustee is the holder of the instrument, a non-holder in possession of the instrument who has the rights of a holder, or a party not in possession of the instrument who is entitled to enforce the instrument pursuant to a court order issued under Nevada Revised Statutes § 104.3309.

3.    The beneficiary, its successor in interest, the servicer of the obligation or debt secured by the Deed of Trust, the trustee, or an attorney representing any of those parties, has sent a written statement to the obligor or borrower of the obligation or debt secured by the Deed of Trust detailing:



a.  the amount of the payment required in order to cure the deficiency in performance or payment, avoid the exercise of the power of sale, and reinstate the terms and conditions of the underlying obligation or debt existing before the deficiency in performance or payment, as of the date of the written statement;

b.  the amount in default;

c.  the principal amount of the obligation or debt secured by the Deed of Trust;

d.  the amount of accrued interest and late charges;

e.  a good faith estimate of all fees imposed in connection with the exercise of the power of sale;

f.  contact information for obtaining the most current amounts due and a local or toll-free telephone number that the obligor or borrower of the obligation or debt could call to receive the most current amounts due and a recitation of the information contained in this affidavit.

4.  The local or toll-free telephone number that the obligor or borrower of the obligation or debt may call to receive the most current amounts due and a recitation of the information contained in this affidavit is:

     (866) 263-5802        
Local or toll-free telephone number

5.  The following information consists of the date, recordation number/other unique designation of, and the name of each assignee under each recorded assignment of the Deed of Trust, and is based on: (a) the direct personal knowledge of the affiant; (b) the personal knowledge which the affiant acquired by a review of the business records kept in the regular course of business of the beneficiary, its successor in interest, or the servicer of the obligation or debt secured by the Deed of Trust in accordance with the standards set forth in Nevada Revised Statutes § 51.135; (c) information contained in the records of the recorder of the county in which the property is located; or (d) the title guaranty or title insurance issued by a title insurer or title agent authorized to do business in the state of Nevada pursuant to chapter 692A of the Nevada Revised Statutes:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA14, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA14

| 06/24/2011 | 201106240003385 | |
|---|---|---|
| Date | Recordation Number | Name of Assignee |

6.  The following is the true and correct signature of the affiant:

Dated this 14th day of January , 2015 .

New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing

Signed by: _____

Printed Name of Affiant: Matthew Winden

Foreclosure Specialist

Nevada Judicial Foreclosure
Created 9/1/2012
Revised 6/17/2013

3

P.O. BOX 10826
TROY, MI 48099-1410
RETURN SERVICE REQUESTED



# Shellpoint

Mortgage Servicing

**Mon-Thurs:** 8:00AM-6:00PM
**Fri:** 8:00AM-5:00PM

**Phone Number:** 866-825-2174
**Fax:** 866-467-1187
**Email:** Lossmitigation@shellpointmtg.com

S-SFRECS20 L-1030 R-106
P4I25B00100116 - 066745428 I00232
CRISPIN T RIVERA
NORMA RIVERA
4734 RANCHO CAMINO CT
LAS VEGAS NV 89129-3684

| Loan Number: | 0520592710 |
|---|---|
| Principal Balance: | $619,328.56 |
| Property: | 4734 Rancho Camino Court |
| | Las Vegas, NV 89129 |

05/18/2015

Dear Crispin T Rivera and Norma Rivera:

Shellpoint Mortgage Servicing ("Shellpoint") has received your request for a loss mitigation program. We are currently reviewing your initial documentation package to determine if the referenced loan qualifies for one of our programs.

The evaluation process will begin once we have received all required documentation. During the evaluation process, your property will not be referred to foreclosure or be sold at a foreclosure sale if the foreclosure process has already been initiated. If your foreclosure process has been initiated, we may be unable to stop a sale where a court with jurisdiction over the foreclosure proceeding (if any) or public official charged with carrying out the activity could fail or refuse to halt a scheduled foreclosure sale.

It may take up to thirty (30) days for Shellpoint to review your request after we receive all required documentation. **All documents must be no older than 90 days at the time the complete package is received.** If additional documentation is needed, we will contact you.

Please continue to make your monthly payment according to your loan agreement.  *no loan agreement from Shellpoint*

Upon completion of the evaluation process, we will notify you of the results in writing. If you are approved for a loss mitigation program, we will notify you of the length of time you have to consider the offer before accepting. In most cases, this is between fourteen (14) and thirty (30) days.

Should your loan not qualify for a particular loss mitigation program such as a modification, we will review your loan for other possible workout options or foreclosure alternatives such as a short sale. The timeline of a short sale can vary between thirty (30) and one hundred and twenty (120) days after the receipt of all required documentation based on the current investor. If approved for a short sale, Shellpoint reserves the right to pursue a deficiency payment if such deficiency claim is permitted by applicable law.

*We may order an appraisal to determine the property's value and charge you for this appraisal. We will promptly give you a copy of any appraisal, even if you are not approved for Loss Mitigation. You can pay for an additional appraisal for your own use at your own cost.*

You should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

Should you have questions, please contact us at 866-825-2174 or visit our website at www.shellpointmtg.com.

Sincerely,

Loss Mitigation Department
Shellpoint Mortgage Servicing

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

*mim miliman warring* ↑ 15 USC. 1692 (a)(1)

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector. — 15 USC 1692 a(6)

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource and the United States Armed Forces Legal Assistance or other similar agencies.

The following is a Spanish translation of the information previously provided:

### Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una eliminación de esta deuda por bancarrota: tenga en cuenta que esta notificación tiene como fin informarle sobre el estado de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ningno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud del Artículo 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

**Atención uniformados y dependientes:** la Ley federal de Ayuda Civil para Uniformados y algunas leyes estatales brindan importantes protecciones para usted, que incluyen protecciones para las tasas de interés y la prohibición de las ejecuciones hipotecarias en la mayoria de las circunstancias durante y doce meses después del servicio militar u otro tipo de servicio. Hay consejería para los uniformados disponible de Military OneSource y de United States Armed Forces Legal Assistance (Asistencia jurídica para las Fuerzas Armadas de los Estados Unidos) u otros organismos similares.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "B"

## PLAINTIFF NOTICE OF DISPUTE

**COMPLAINT FOR DAMAGES**

Norma Rivera, *Consumer Plaintiff*                                        June 10, 2015
4734 Rancho Camino Court
Las Vegas, Nevada [89129]


NEW PENN FINANCIAL, LLC
d/b/a SHELLPOINT MORTGAGE SERVICING
55 Beattie Place
Suite 110 Mail Stop 005
Greenville, SC 29601


Re: Notice of Dispute, Demand for Verification/ Validation of Alleged Debt


Legal Department;


I recently received a dunning letter notice, demand for payment, and or threat of alleged foreclosure

from your company. This notice will be considered a "communication" with both state and the federal

consumer protection laws respectively.

Base upon the information contained in your dunning notice, and my lack of knowledge of an

established business relationship, and or written contract with your company, your alleged debt is hereby

disputed in its entirely, including amount alleged to be due and owing.

Be advice the above name person is " consumer" as the term is defined in 15 USC§1692a(3),

FDCPA, and Nevada Fair Debt Collections Practices Act 649.030. Upon information and belief your

company is attempting to collect a " debt" pursuant to  15 USC§1692a (5), Nevada Fair Debt Collections

Practices Act 649.010. Based upon documentary evidence available to me, your company appears to have

obtained the alleged debt while in default, therefore your are not a" creditor" as defined in 15

USC§1692a(4), , Nevada Fair Debt Collection Practices Act 691C.080.

Notwithstanding your company are considered " debt collector" as defined by USC§1692a(6),,),

Nevada Fair Debt Collection Practices Act 649.020.

1
CONSUMER NOTICE OF DISPUTE AND INTENT TO FILE SUIT

In light of this fact, you are required to comply with all state and federal consumer protection laws accordingly.

I have obtained copies documents from Clark County Recorder 's office, styled an Assignment of Mortgage" (or Deed of Trust). These documents appear to indicate that a transaction occurred with your company, and the alleged " original creditor" you purport to be acting in and for. Upon belief this document contains several misrepresentations that will require explanation. Specifically, then " assignment " alleged "valuable consideration" was paid to a company named "MERS", but no proof of this payment is provided. Please provide an explanation of this transaction, as well as proof of the payment you made to MERS. Additionally please provide a clear definition of the word termed " valuable consideration" and stated in the assignment of mortgage.

In concluding, should your company continue collections of the alleged debt in any matter, prior to complying with the consumer protections statutes of this state and federal laws, suit may be filed against you without further notice.

Warmest Regards,

Norma Rivera, *Consumer Plaintiff*

Enclosed: Dunning Letter

Certified Mail # *7014 1820 0000 4051 9932*

2

CONSUMER NOTICE OF DISPUTE AND INTENT TO FILE SUIT

Inst #: 20150219-0004702
Fees: $222.00
N/C Fee: $25.00
02/19/2015 01:22:47 PM
Receipt #: 2319865
Requestor:
ORDM - TSG
Recorded By: ANI   Pgs: 6
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

APN: 138-05-110-019
WHEN RECORDED MAIL TO:
New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing
55 BEATTIE PLACE
SUITE 110 MAIL STOP 005
GREENVILLE, SC 29601

TS No.: 13-50796 TSG Order No.: 02-13021133
The undersigned hereby affirms that there is no Social Security number contained in this document.

## NOTICE OF BREACH AND DEFAULT AND OF ELECTION TO CAUSE
### SELL OF REAL PROPERTY UNDER DEED OF TRUST

**NOTICE IS HEREBY GIVEN THAT:** Old Republic Default Management Services, a Division of Old Republic National Title Insurance Company, P.O. Box 250, Orange, CA 92856-6250 is either the original Trustee, the duly appointed substituted or acting as agent for the trustee or beneficiary under a Deed of Trust dated 8/2/2006, executed by **CRISPIN T. RIVERA AND NORMA C. RIVERA, HUSBAND AND WIFE AS JOINT TENANTS,** as trustor in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GATEWAY BANK, FSB, A FEDERAL SAVINGS BANK,** recorded 8/11/2006, under instrument no. 20060811-0000570 , of Official Records in the office of the County recorder of Clark, County, Nevada securing, among other obligations.

The property address is purported to be: **4734 RANCHO CAMINO COURT, LAS VEGAS, NV 89129**

Included among these obligations is one Note for the Original sum of **$584,000.00.** The beneficial interest under such Deed of Trust and the obligations secured hereby are presently held by New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing **AS SERVICER FOR THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA14, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA14** as the current beneficiary or its agent; and a breach of, and/or default in the obligations for which such Deed of Trust is security has occurred or that payment has not been made of:
**Installment of Principal and Interest plus impounds and/or advances which became due on 3/1/2010 plus late charges, and all subsequent installments of principal, interest, plus impounds and/or advances and late charges that become payable.**

That by reason thereof the present Beneficiary under such Deed of Trust has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.



T.S. No.: 13-50796

# NOTICE

You may have the right to cure the default hereon and reinstate the one obligation secured by such Deed of Trust above described. Section NRS 107.080 permits certain defaults to be cured upon the Payment of the amounts required by that statutory section without requiring payment of that portion of principal and interest which would not be due had no default occurred. Where reinstatement is possible, if the default is not cured and mailing of this Notice to Trustor or Trustor's successor in interest, the right of reinstatement will terminate and the property may thereafter be sold. The Trustor may have the right to bring a court action to assert the nonexistence of a default or any other defense of Trustor to acceleration and Sale.

**To determine if reinstatement is possible and the amount, if any, to cure the default, contact: Loss Mitigation**

**New Penn Financial, LLC d/b/a**
**Shellpoint Mortgage Servicing**
**55 BEATTIE PLACE**
**SUITE 110 MAIL STOP 005**
**GREENVILLE, SC 29601**
**Attn: Foreclosure Department**

**Old Republic National Title Insurance Company**
**PO Box 250**
**Orange, California 92856-6250**
**(866) 263-5802**

Dated: 2\18\15

**Old Republic National Title Insurance Company, as Trustee and/or as Agent for the beneficiary**

By: _____
**Dalaysia Ramirez , Assistant Secretary**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

State of California }ss
County of Orange}

On 2/18/15 before me, **Carrisa Bey**  Notary Public, personally appeared **Dalaysia Ramirez** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____ (Seal)
**Carrisa Bey**

CARRISA BEY
Commission # 2088448
Notary Public - California
Orange County
My Comm. Expires Oct 17, 2018

"We are attempting to collect a debt, and any information we obtain will be used for that purpose."

mini miranda warning   15 USC 1692 e(11)

The full name and business address of the current holder of the note secured by the Deed of Trust is:

New Penn Financial, LLC d/b/a
Shellpoint Mortgage Servicing AS
SERVICER FOR THE BANK OF NEW
YORK MELLON FKA THE BANK OF
NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT,
INC., ALTERNATIVE LOAN TRUST
2006-OA14, MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES
2006-OA14

55 BEATTIE PLACE
SUITE 110 MAIL STOP 005
GREENVILLE, SC 29601

Full Name                           Street, City, County, State, Zip

The full name and business address of the current beneficiary of record of the Deed of Trust is:

New Penn Financial, LLC d/b/a
Shellpoint Mortgage Servicing AS
SERVICER FOR THE BANK OF NEW
YORK MELLON FKA THE BANK OF
NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT,
INC., ALTERNATIVE LOAN TRUST
2006-OA14, MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES
2006-OA14

55 BEATTIE PLACE
SUITE 110 MAIL STOP 005
GREENVILLE, SC 29601

Full Name                           Street, City, County, State, Zip

The full name and business address of the current servicer of the obligation or debt secured by the Deed of Trust is:

New Penn Financial, LLC d/b/a
Shellpoint Mortgage Servicing

55 BEATTIE PLACE
SUITE 110 MAIL STOP 005
GREENVILLE, SC 29601

Full Name                           Street, City, County, State, Zip

2.    The beneficiary, its successor in interest, or the trustee of the Deed of Trust is: (a) in actual or constructive possession of the Note secured by the Deed of Trust; or (b) entitled to enforce the obligation or debt secured by the Deed of Trust because the beneficiary, its successor in interest, or the trustee is the holder of the instrument, a non-holder in possession of the instrument who has the rights of a holder, or a party not in possession of the instrument who is entitled to enforce the instrument pursuant to a court order issued under Nevada Revised Statutes § 104.3309.

3.    The beneficiary, its successor in interest, the servicer of the obligation or debt secured by the Deed of Trust, the trustee, or an attorney representing any of those parties, has sent a written statement to the obligor or borrower of the obligation or debt secured by the Deed of Trust detailing:



a. the amount of the payment required in order to cure the deficiency in performance or payment, avoid the exercise of the power of sale, and reinstate the terms and conditions of the underlying obligation or debt existing before the deficiency in performance or payment, as of the date of the written statement;

b. the amount in default;

c. the principal amount of the obligation or debt secured by the Deed of Trust;

d. the amount of accrued interest and late charges;

e. a good faith estimate of all fees imposed in connection with the exercise of the power of sale;

f. contact information for obtaining the most current amounts due and a local or toll-free telephone number that the obligor or borrower of the obligation or debt could call to receive the most current amounts due and a recitation of the information contained in this affidavit.

4.     The local or toll-free telephone number that the obligor or borrower of the obligation or debt may call to receive the most current amounts due and a recitation of the information contained in this affidavit is:

___(866) 263-5802_____
Local or toll-free telephone number

5.     The following information consists of the date, recordation number/other unique designation of, and the name of each assignee under each recorded assignment of the Deed of Trust, and is based on: (a) the direct personal knowledge of the affiant; (b) the personal knowledge which the affiant acquired by a review of the business records kept in the regular course of business of the beneficiary, its successor in interest, or the servicer of the obligation or debt secured by the Deed of Trust in accordance with the standards set forth in Nevada Revised Statutes § 51.135; (c) information contained in the records of the recorder of the county in which the property is located; or (d) the title guaranty or title insurance issued by a title insurer or title agent authorized to do business in the state of Nevada pursuant to chapter 692A of the Nevada Revised Statutes:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA14, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA14

| _06/24/2011_ | _201106240003385_ | |
|---|---|---|
| Date | Recordation Number | Name of Assignee |

6.     The following is the true and correct signature of the affiant:

Dated this 14th day of January_____, 2015.

New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing

Signed by:

Printed Name of Affiant:     Matthew Windon
                              Foreclosure Specialist

3

Nevada Judicial Foreclosure
Created 9/1/2012
Revised 6/17/2013

## NEVADA DECLARATION OF COMPLIANCE
NRS Chapter 107, as revised by SB 321 section 11 subsection 6

Borrower(s):         CRISPIN T. RIVERA and NORMA C. RIVERA
Mortgage Servicer:   New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing
Property Address:    4734 RANCHO CAMINO COURT
13-50796             LAS VEGAS, NV 89129

The undersigned mortgage servicer representative declares as follows (Check ONE):

☑  The mortgage servicer contacted the borrower to assess the borrower's financial situation
   and to explore options for the borrower to avoid foreclosure as required by NRS Chapter
   107, as revised by SB 321 section 11 subsection 2.  Thirty days, or more, have passed
   since the initial contact was made.

☐  The mortgage servicer tried with due diligence but was unable to contact the borrower as
   required by NRS Chapter 107, as revised by SB 321 section 11 subsection 5.  Thirty
   days, or more, have passed since these due diligence efforts were satisfied.

☐  The mortgage servicer was not required to comply with NRS Chapter 107, as revised by
   SB 321 section 11, because the individual does not meet the definition of a "borrower"
   under NRS Chapter 107 as revised by SB 321 section 3.

☐  The mortgage servicer was not required to comply with NRS Chapter 107, as revised by
   SB 321 section 11, because it is a financial institution that, during its immediately
   preceding annual reporting period, as established with its primary regulator, has
   foreclosed on 100 or fewer owner-occupied real properties located in the State of Nevada.

I declare under penalty of perjury under the law of the State of Nevada that the foregoing
is true and correct.

Executed on ~Jan. 23,_____ 201*5* at Houston_____, Texas_____.

New Penn Financial, LLC d/b/a Shellpoint Mortgage
Servicing  AS SERVICER FOR THE BANK OF
NEW YORK MELLON FKA THE BANK OF
NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT, INC.,
ALTERNATIVE LOAN TRUST 2006-OA14,
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2006-OA14

By: *Linda Jacobs, Fulfillment Specialist*



T.S. No.: 13-50796
APN: 138-05-110-019

## AFFIDAVIT OF AUTHORITY IN SUPPORT OF NOTICE OF DEFAULT AND ELECTION TO SELL
### [NRS § 107.080]

Property Owners:
CRISPIN T. RIVERA and NORMA C. RIVERA

Trustee Address:
Old Republic Default Management Services, a
Division of Old Republic National Title Insurance
Company, P.O. Box 250, Orange, CA 92856-6250
500 City Parkway West, Suite 200
Orange, CA 92868

Property Address:
4734 RANCHO CAMINO COURT
LAS VEGAS, NV 89129

Deed of Trust Document Instrument Number
8/11/2006 20060811-0000570 -- --

The affiant, Matthew Winden _____, being first duly sworn upon oath, based on personal knowledge which the affiant acquired through a review of business records kept in the regular course of business of the beneficiary, its successor in interest, or the servicer of the obligation or debt secured by the above-referenced deed of trust (hereinafter "Deed of Trust") in accordance with the standards set forth in Nevada Revised Statutes § 51.135, and under penalty of perjury, attests that I am an authorized representative of the beneficiary, its successor in interest, or the servicer of the obligation or debt secured by the Deed of Trust, which is described in the Notice of Default and Election to Sell to which this affidavit is attached.

I further attest, based on personal knowledge, and under penalty of perjury, to the following information, as required by NRS 107.080(2)(c):

1.    The full name and business address of the current trustee or the current trustee's personal representative or assignee is:

Old Republic Default Management
Services, a Division of Old Republic
National Title Insurance Company, P.O.
Box 250, Orange, CA  92856-6250
    Full Name

500 City Parkway West, Suite 200
Orange, CA 92868



Street, City, County, State, Zip



U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at *www.usps.com*®.

GREENVILLE SC 29601

| | | |
|---|---|---|
| Postage | $ | $3.45 |
| Certified Fee | | $0.00 |
| Return Receipt Fee (Endorsement Required) | | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | N/A |
| | | $0.49 |
| Total Postage & Fees | $ | $3.94 |

0015
21   Postmark
Here

JUN -9 2015

06/10/2015

USPS

Sent To   NEWPENN FINANCIAL LLC
d/b/a SHELLPOINT MORTGAGE SERVICING
Street & Apt. No.   55 Beattie Place
or PO Box No.   Suite 110 Mail Stop 005
City, State, ZIP+4   Greenville, SC 29601

7014 1820 0000 4051 9932

PS Form 3800

SERVED BY US FIRST CLASS MAIL

Norma Rivera, Consumer                                    DATE: June 10, 2015
4734 Rancho Camino Court
Las Vegas, Nevada [89129]


NEW PENN FINANCIAL, LLC
d/b/a SHELLPOINT MORTGAGE SERVICING
55 Beattie Place
Suite 110 Mail Stop 005
Greenville, SC 29601


RE: Notice of Dispute, Demand for Verification/Validation of Alleged Debt;

        I recently received a dunning letter from your entity/ agency and amount of alleged owed
debt, allegedly executed with DEBT COLLECTOR ("SHELLPOINT MORTGAGE SERVICING") on
or about May 18, 2015. (See Attached) Accordingly my records reflect you are not, either have you
been creditor of mine or one that I have conducted any consumer transaction with. Therefore your
identity is unknown to me at this time, you appear not to be known party to any transaction that I
**Recall.** This requires further information and documentation from you to verify your status and
capacity. Therefore I am respectfully demanding verification and or validation of any alleged debt
pursuant to 15 USC§1681, and NRS§649.332 respectively.

        SHELLPOINT MORTGAGE SERVICING is a " debt collector" pursuant to 15§1692a(6),
15 USC§1681n, and NRS§ 649.332. Norma Rivera is a " consumer " as the term defined in 15
USC§1692a(3), 15USC§1681 and NRS §649.332. SHELLPOINT MORTGAGE SERVICING is not
a creditor, and I have not applied for, neither received any services or credit with your particular
agency.

        In light of the foregoing please provide the alleged original genuine executed
agreement that memorializes the transaction between you and I that support your alleged debt. If
your debt collection firm is unable to provide a sufficient legal basis for your illegal intrusion to my
credit file, erroneous credit reporting, and dunning letter demanding payment. I will bring suit

1

against your agency for violations of federal and state consumer protection law. Therefore this notice can be construed as a Notice of Intent to bring such action if your response does not support a legal debt "owed" to your agency. In concluding you are required to respond within five (5) business days to my request, should you fail to timely response, and or proffer a non -response I will bring suit without further notice.

Regards,

Norma Rivera

ENCLOSED: Dunning Letter

Certified Mail #: *7014 1820 0000 4051 9949*

P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED



Mon – Thurs. 8:00AM-5:00PM

**Shellpoint**
Mortgage Servicing

**Phone Number:** 866-825-2174
**Fax:** 866-467-1187
**Email:** Lossmitigation@shellpointmtg.com

S-SFRECS20 L-1030 R-106
P4125B00100116 - 066745428 I00232
CRISPIN T RIVERA
NORMA RIVERA
4734 RANCHO CAMINO CT
LAS VEGAS NV 89129-3684

| Loan Number: | 0520592710 |
|---|---|
| Principal Balance: | $619,328.56 |
| Property: | 4734 Rancho Camino Court |
| | Las Vegas, NV 89129 |

05/18/2015

Dear Crispin T Rivera and Norma Rivera:

Shellpoint Mortgage Servicing ("Shellpoint") has received your request for a loss mitigation program. We are currently reviewing your initial documentation package to determine if the referenced loan qualifies for one of our programs.

The evaluation process will begin once we have received all required documentation. During the evaluation process, your property will not be referred to foreclosure or be sold at a foreclosure sale if the foreclosure process has already been initiated. If your foreclosure process has been initiated, we may be unable to stop a sale where a court with jurisdiction over the foreclosure proceeding (if any) or public official charged with carrying out the activity could fail or refuse to halt a scheduled foreclosure sale.

It may take up to thirty (30) days for Shellpoint to review your request after we receive all required documentation. **All documents must be no older than 90 days at the time the complete package is received.** If additional documentation is needed, we will contact you.

Please continue to make your monthly payment according to your loan agreement. *no loan agreement from shellpoint*

Upon completion of the evaluation process, we will notify you of the results in writing. If you are approved for a loss mitigation program, we will notify you of the length of time you have to consider the offer before accepting. In most cases, this is between fourteen (14) and thirty (30) days.

Should your loan not qualify for a particular loss mitigation program such as a modification, we will review your loan for other possible workout options or foreclosure alternatives such as a short sale. The timeline of a short sale can vary between thirty (30) and one hundred and twenty (120) days after the receipt of all required documentation based on the current investor. If approved for a short sale, Shellpoint reserves the right to pursue a deficiency payment if such deficiency claim is permitted by applicable law.

*We may order an appraisal to determine the property's value and charge you for this appraisal. We will promptly give you a copy of any appraisal, even if you are not approved for Loss Mitigation. You can pay for an additional appraisal for your own use at your own cost.*

You should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

Should you have questions, please contact us at 866-825-2174 or visit our website at www.shellpointmtg.com.

Sincerely,

Loss Mitigation Department
Shellpoint Mortgage Servicing

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P I000001 A-0520592710 003330101J0400

*mini miranda*
*15 USC 1692e*

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector. — *15 USC 1692 a (6)*

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource and the United States Armed Forces Legal Assistance or other similar agencies.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una eliminación de esta deuda por bancarrota: tenga en cuenta que esta notificación tiene como fin informarle sobre el estado de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ningno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud del Artículo 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

**Atención uniformados y dependientes:** la Ley federal de Ayuda Civil para Uniformados y algunas leyes estatales brindan importantes protecciones para usted, que incluyen protecciones para las tasas de interés y la prohibición de las ejecuciones hipotecarias en la mayoría de las circunstancias durante y doce meses después del servicio militar u otro tipo de servicio. Hay consejería para los uniformados disponible de Military OneSource y de United States Armed Forces Legal Assistance (Asistencia jurídica para las Fuerzas Armadas de los Estados Unidos) u otros organismos similares.



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at **www.usps.com®**.

GREENVILLE, SC 29601

| | | |
|---|---|---|
| Postage | $ | $3.45 |
| Certified Fee | | $0.00 |
| | | $3.30 |
| Return Receipt Fee (Endorsement Required) | | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | N/A |
| Total Post | | $6.49 |

0015
21  Postmark
JUN -9 2015
06/10/2015

Sent To  **NEWPENN FINANCIAL LLC**
**d/b/a SHELLPOINT MORTGAGE SERVICING**
Street & Apt. **55 Beattie Place**
or PO Box  **Suite 110 Mail Stop 005**
City, State,  **Greenville, SC 29601**

PS Form 3800, July 2014

7014 1820 0000 4051 9499

# EXHIBIT "C"

## DEFENDANT RESPONSE TO PLAINTIFF NOTICE OF DISPUTE



P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED



**Mon - Thurs:** 8:00AM-10:00PM
**Fri:** 8:00AM-10:00PM
**Sat:** 8:00AM-3:00PM

**Phone Number:** 866-316-4706
**Fax:** 866-467-1137
www.shellpointmtg.com

S-SFRECS20  L-150  R-117
P4LWDE00200079 - 673113379 I00158
CRISPIN T RIVERA
NORMA RIVERA
4734 RANCHO CAMINO CT
LAS VEGAS NV 89129-3684

06/24/2015

**RE:    Loan Number: 0520592710**
**Borrowers: Crispin T Rivera and Norma Rivera**

Dear Crispin T Rivera and Norma Rivera:

This letter is in response to your recent inquiry regarding the above-referenced account serviced by Shellpoint Mortgage Servicing on behalf of BANK OF NEW YORK AS TRUSTEE FOR CWALT 2006-OA14, the owner of your loan. Their contact information is:

Address: 101 Barclay St., 8W 0  New York NY 10286

We are working to gather the requested information and will forward it to you as soon as possible.

If you have any additional questions or concerns, please contact our Customer Service department at 866-316-4706.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-316-4706.

**Customer Service**
**Shellpoint Mortgage Servicing**

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource and the United States Armed Forces Legal Assistance or other similar agencies.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una eliminación de esta deuda por bancarrota: tenga en cuenta que esta notificación tiene como fin informarle sobre el estado de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ningno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud del Artículo 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

**Atención uniformados y dependientes:** la Ley federal de Ayuda Civil para Uniformados y algunas leyes estatales brindan importantes protecciones para usted, que incluyen protecciones para las tasas de interés y la prohibición de las ejecuciones hipotecarias en la mayoría de las circunstancias durante y doce meses después del servicio militar u otro tipo de servicio. Hay consejería para los uniformados disponible de Military OneSource y de United States Armed Forces Legal Assistance (Asistencia jurídica para las Fuerzas Armadas de los Estados Unidos) u otros organismos similares.

Rec'd – 6/31/15



# Shellpoint
## Mortgage Servicing

| | | *Hours of Operation* |
|---|---|---|
| 55 Beattie Place, Suite 110 | Toll Free Phone 866-316-4706 | Monday-Friday 8:00AM-10:00PM |
| Greenville, SC 29601 | Toll Free Fax 1-866-467-1137 | Saturday 8:00AM-3:00PM |

June 29, 2015

Crispin Rivera
Norma Rivera
4734 Rancho Camino Court
Las Vegas, NV 89129

RE:     Current Owner: Bank of New York as Trustee for CWALT 2006-OA14
        Loan Number: xxxxx8282
        Reference Number: 0520592710

Crispin and Norma:

This letter is in response to your correspondence dated June 10, 2015, regarding the above referenced loan. Bank of New York as Trustee for CWALT 2006-OA14 ("BONY") is currently the owner of the account number ending in 4543. Shellpoint Mortgage Servicing ("Shellpoint") began servicing the loan on behalf of the owner referenced above, on or about March 1, 2014.

As of the date of this communication the balance owed is $773, 672.78 (*which includes interest, fees and negative escrow*). Because interest, payments, credits, fees and/or other permissible charges can cause the loan balance to vary from day to day, please contact us at 866-316-4706 to determine the exact balance.

Upon review of your correspondence, Shellpoint has determined that some of your inquiries do not fall within the scope of a Qualified Written Request because they are related to the origination of the loan or the trust. Shellpoint is required to respond to inquiries relating to the servicing of the loan. We are not required to respond to inquiries related to origination, underwriting, subsequent sale or securitization, or determination to sell, assign, or transfer the servicing of the mortgage loan. Furthermore, Shellpoint is not required to provide the original wet ink documents, nor the name and location of the document custodian. Shellpoint also will not provide the Pooling and Servicing Agreement, as it contains proprietary information. This information is a matter of public record and you may be able to find it at www.sec.gov.

In consideration of the present investigation, it has also been determined that Shellpoint is reporting this loan accurately to the four major consumer reporting agencies, Equifax, Experian, TransUnion, and Innovis, according to the information and documentation provided herein.

Please review the following loan information:

1.  The current owner of this loan is BONY and their address is:

        101 Barclay St. 8W
        New York, NY 10286

KW06302015C

2. This loan originated with Gateway Bank, FSB, A Federal Savings Bank on August 2, 2006, for an Adjustable Rate Note.

3. The original loan was for $584,000.00, at an initial interest rate of 2.000% and initial payments of $1,768.50. The interest rate may change, as described in Section 2 of the Note.

4. Payments are to be made on the 1st day of each month beginning October 1, 2006, plus any remaining amount due on the maturity date of September 1, 2046.

5. The loan was modified by Countrywide on April 1, 2009.

6. The previous servicer advises that the last regular payment received on the loan was on March 11, 2010 for the February 2010 installment.

7. No payments have been made since the loan was transferred to Shellpoint in March 2014.

8. The loan is past due and has been since March 1, 2010.

Enclosed is a copy of the Assignment, Adjustable Rate Note, Allonge to the Note, Adjustable Rate Rider, Deed of Trust, Truth in Lending Disclosure, Loan Application, Settlement Statement, Loan Modification Agreement, Notices of Servicing Transfer, and the loan transaction history.

As you are aware, this loan is in default for non-payment and foreclosure proceedings have been instituted. Should you wish to explore the available options to resolve the default and the related foreclosure, please contact the assigned loss mitigation specialist to discuss options. **Tara Merino** is the specialist assigned to assist you throughout the loss mitigation process and she can be reached directly at **832-775-7738**.

If you believe there are significant errors in the servicing of this loan, please provide specific details regarding any errors you believe have occurred, along with any supporting documentation you may have, and Shellpoint will gladly assist.

If we do not receive additional information from you within thirty (30) days from the date this letter is received, we will assume this dispute is resolved. If you have any further questions, comments or concerns, please contact Customer Service at 866-316-4706.

Sincerely,

E. Farinella
Shellpoint Mortgage Servicing

---

This communication is sent to you by Shellpoint Mortgage Servicing, a professional debt collector.

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United

States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una eliminación de esta deuda por bancarrota: tenga en cuenta que esta notificación tiene como fin informarle sobre el estado de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ningno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud del Artículo 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

Inst #: 201106240003385
Fees: $15.00
N/C Fee: $0.00
06/24/2011 12:36:08 PM
Receipt #: 823715
Requestor:
CORELOGIC
Recorded By: ARO   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

Recording Requested By:
Bank of America
Prepared By: Youda Crain
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

DocID# 83213040828215980
Tax ID:      138-05-110-019
Property Address:
4734 Rancho Camino Court
Las Vegas, NV 89129-3684
NV0-ADT 14089134    6/14/2011

This space for Recorder's use

MIN #: 1001340-0110014009-9        MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST   2006-OA14, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA14** whose address is 101 BARCLAY ST - 4W, NEW YORK ,NY 10286 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:     **GATEWAY BANK, FSB.**
Made By            **CRISPIN T. RIVERA AND NORMA C. RIVERA, HUSBAND AND WIFE AS JOINT TENANTS**
Trustee:           **NORTH AMERICAN TITLE**
Date of Deed of Trust: 8/2/2006      Original Loan Amount: $584,000.00

Recorded in Clark County, NV on: 8/11/2006, book N/A, page N/A and instrument number 20060811-0000570

I the undersigned hereby affirm that this document submitted for recording does not contain the social security number of any person or persons.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
6/22/11

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By:
Christopher Herrera, Assistant Secretary

610  130408282  D8  001  003

State of California
County of Ventura

On 6-22-2011 before me, Norma Rojas, Notary Public, personally appeared Christopher Herrera, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Norma Rojas                    (Seal)
My Commission Expires: 2/14/2015

NORMA ROJAS
Commission # 1925882
Notary Public - California
Ventura County
My Comm. Expires Feb 14, 2015

Attached: Assignment of Deed of Trust
borrower(s): Crispin T. Rivera
Norma C. Rivera

1304082-82

LOAN #: 80-834543
MIN: 1001340-0110014009-9

# ADJUSTABLE RATE NOTE
## (MTA-Twelve Month Average·Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

AUGUST 2, 2006                              SAN LEANDRO,                              CALIFORNIA
[Date]                                         [City]                                  [State]

4734 RANCHO CAMINO COURT, LAS VEGAS, NV 89129
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S.   $584,000.00        (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed        115.000%        of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is   GATEWAY BANK, FSB, A FEDERAL SAVINGS BANK.

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
### (A) Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   2.000%.       The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.
### (B) Interest Rate Change Dates
The interest rate I will pay may change on the   1ST   day of OCTOBER, 2006        and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.
### (C) Index
Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
### (D) Calculation of Interest Rate Changes
Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND ONE-FIFTH                    percentage point(s)   3.200%       ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than   9.950%.       Beginning with the first interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will make a payment every month.
I will make my monthly payments on the   1ST   day of each month beginning on OCTOBER 1, 2006.
I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   SEPTEMBER 1, 2046,        I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
919 CLEMENT STREET
SAN FRANCISCO, CA ·94118-2110

or at a different place if required by the Note Holder.

PayOption ARM Note - MTA Index 10/04 FE-5312 (0511)                  Initials:
Online Documents, Inc.                        **Page 1 of 4**                  P5109NOT 0512

ORIGINAL NOTE

LOAN #: 80-834543

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. **$1,768.50**      unless adjusted under Section 3(F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the       **1ST**      day of **OCTOBER, 2007**      and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed the Maximum Limit equal to  **115.000%**      percent of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the  **5TH**      Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

    **(i)  Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

    **(ii)  Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

    **(iii) 15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**4.  NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount

Initials: _____

P5100NOT   0512

**LOAN #: 80-834543**

of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. **THIS SECTION IS SUPERSEDED BY THE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF.**

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000%      of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably

LOAN #: 80-834543

determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

THE PROVISIONS CONTAINED IN THE "ADDENDUM TO NOTE", SIGNED BY ALL BORROWERS NAMED HEREIN, ARE HEREBY INCORPORATED INTO AND SHALL AMEND AND SUPPLEMENT THIS NOTE.

_____ (Seal)
CRISPIN T. RIVERA

_____ (Seal)
NORMA C. RIVERA

DATE: AUGUST 2, 2006
BORROWER: CRISPIN T. RIVERA AND NORMA C. RIVERA

LOAN #: 80-834543
PROPERTY ADDRESS:   4734 RANCHO CAMINO COURT
                    LAS VEGAS, NV 89129

# PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated   AUGUST 2, 2006           and is incorporated into and amends and supplements the Note of the same date (the "Note") given by   GATEWAY BANK, FSB, A FEDERAL SAVINGS BANK

(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section:

BORROWER'S RIGHT TO PREPAY
    I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so.
    Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. If I make a Partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment.
    If within the first    36   month(s) after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original Principal amount of this Note. Interest will be calculated using the rate in effect at the time of prepayment. I will pay this Prepayment Penalty regardless of whether I sell the Property or refinance the loan with the same Lender or Note Holder.

All other terms and conditions of the above referenced Note remain in full force and effect.

_____ (Seal)
CRISPIN T. RIVERA

_____ (Seal)
NORMA C. RIVERA

# ALLONGE TO THE NOTE

Note Date:              08/02/2006

Loan amount:            584,000.00

Borrower Name(s):   **CRISPIN T  RIVERA**
                        **NORMA C  RIVERA**

Property Address:      **4734 RANCHO CAMINO COURT**
                        **LAS VEGAS, NV 89129**

Gateway Loan Number:  80-834543

Pay to the order of:  Countrywide Bank, N.A.

Without recourse:  GATEWAY BANK, F.S.B.

By: _____
Officer Name:    Jim McHugh
Officer Title:    Mortgage Lending Officer

Pay to the order of:

Without Recourse
Countrywide Home Loans, Inc.

By: _____
Michelle Sjolander, SVP

Pay to the order of:
Countrywide Home Loans, Inc.

Without Recourse
Countrywide Bank, N.A.

By: _____
Laurie Meder, SVP

MIN: 1001340-0110014009-9

Doc ID#:  80-834543

# ADJUSTABLE RATE RIDER
## (MTA-Twelve Month Average Index - Payment Caps)

THIS ADJUSTABLE RATE RIDER is made this  2ND    day of  AUGUST, 2006
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
GATEWAY BANK, FSB, A FEDERAL SAVINGS BANK

("Lender") of the same date and covering the property described in the Security
Instrument and located at:  4734 RANCHO CAMINO COURT
                            LAS VEGAS, NV 89129

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST
RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE
AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE.
THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE
AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM
LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agrees as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

## 2. INTEREST
### (A) Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been
paid. I will pay interest at a yearly rate of   2.000%.   The interest rate I will pay may
change.
The interest rate required by this Section 2 is the rate I will pay both before and after
any default described in Section 7(B) of the Note.

**PayOption MTA ARM Rider FE-5316** (0511)
Online Documents, Inc.                   Page 1 of 6          P5109RDU          P5109RLU   0512

Initials:

LOAN #: 80-834543

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the    1ST    day of  OCTOBER, 2006  and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding.  THREE AND ONE-FIFTH       percentage point(s)  3.200%  ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than  9.950%.      Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the       1ST    day of each month beginning on  OCTOBER 1, 2006.       I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  SEPTEMBER 1, 2046,       I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

PayOption MTA ARM Rider FE-5315 (0511)

Online Documents, Inc.                    **Page 2 of 6**                    Initials: 

P5109RLU  0512

LOAN #: 80-834543

I will make my monthly payments at
**919 CLEMENT STREET**
**SAN FRANCISCO, CA  94118-2110**

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. **$1,768.50**      unless adjusted under Section 3(F).

### (C) Payment Change Dates
My monthly payment may change as required by Section 3(D) below beginning on the    **1ST**    day of **OCTOBER, 2007**    and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.
I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

Initials:

P5109RLU  0512

LOAN #: 80-834543

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115.000% ) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the 5TH Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

    **(i)  Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current Interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

PayOption MTA ARM Rider FE-5315 (0511)

Online Documents, Inc.                                        **Page 4 of 6**

Initials:

P5109RLU  0512

LOAN #: 80-834543

**(ii) Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

**(iii) 15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than

PayOption MTA ARM Rider FE-5315 (0511)

Online Documents, Inc.

**Page 5 of 6**

Initials: _____

P5109RLU 0512

LOAN #: 80-834543

30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
CRISPIN T. RIVERA

_____ (Seal)
NORMA C. RIVERA

PayOption MTA ARM Rider FE-5315 (0511)
Online Documents, Inc.                    **Page 6 of 6**                    P5109RLU 0512



610   130408282   D2  001  001

*138-05-110-019*

20060811-0000570

Fee: $37.00
N/C Fee: $0.00

08/11/2006          09:02:15
T20060140772
Requestor:
   NORTH AMERICAN TITLE COMPANY
Frances Deane            KXC
Clark County Recorder   Pgs: 24

130408282
CW

After Recording Return To:
GATEWAY BANK, FSB
2306 MERCED STREET
SAN LEANDRO, CA 94577

MAIL TAX STATEMENT TO: GATEWAY BANK, FSB
2306 MERCED STREET, SAN LEANDRO, CA 94577.

APN #: 138-05-110-019

Title Order No.: NV506-53954BDH
Escrow No.: NV506-53954BDH
———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

LOAN #: 80-834543                    MIN  1001340-0110014009-9

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document
are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   **AUGUST 2, 2006,**
together with all Riders to this document.

**(B) "Borrower"** is  CRISPIN T. RIVERA AND NORMA C. RIVERA, HUSBAND AND WIFE AS
JOINT TENANTS.

Borrower is the trustor under this Security Instrument.

Initials: _____

NEVADA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3029 1/01
© 1999-2004 Online Documents, Inc.          **Page 1 of 14**              NVEDEDL  0402

LOAN #: 80-834543

(C) "Lender" is GATEWAY BANK, FSB.

Lender is a FEDERAL SAVINGS BANK,                           organized and existing
under the laws of THE UNITED STATES OF AMERICA.             Lender's address is
2306 MERCED STREET, SAN LEANDRO, CA 94577.

(D) "Trustee" is NORTH AMERICAN TITLE.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has
an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated  AUGUST 2, 2006.
The Note states that Borrower owes Lender  ****FIVE HUNDRED EIGHTY FOUR THOUSAND AND
NO/100*********************************************************************************
********************************   Dollars (U.S.    $584,000.00   ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later
than SEPTEMBER 1, 2046.
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [x] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |
| [ ] V.A. Rider | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments
and other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization.
(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds
paid by any third party (other than insurance proceeds paid under the coverages described in Section
5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part
of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as
to, the value and/or condition of the Property.

Initials: _____

NEVADA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3029 1/01
© 1999-2004 Online Documents, Inc.                 **Page 2 of 14**                      NVEDEDL   0402

LOAN #: 80-834543

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          COUNTY
[Type of Recording Jurisdiction] of    CLARK                        [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF
APN #: 138-05-110-019

which currently has the address of    4734 RANCHO CAMINO COURT, LAS VEGAS,
[Street] [City]

Nevada     89129         ("Property Address"):
           [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials: ____

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3029 1/01
© 1999-2004 Online Documents, Inc.                **Page 3 of 14**                              NVEDEDL  0402

**LOAN #: 80-834543**

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment

Initials: ___

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3029 1/01
© 1999-2004 Online Documents, Inc.                    **Page 4 of 14**                    NVEDEDL   0402

LOAN #: 80-834543

Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien

Initials: ___

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3029 1/01
© 1999-2004 Online Documents, Inc.              **Page 5 of 14**                    NVEDEDL  0402

LOAN #: 80-834543

in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole

Initials: [handwritten]

**LOAN #: 80-834543**

obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   **6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   **7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

   Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

   **8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

   **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

Initials: _____

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3029 1/01
© 1999-2004 Online Documents, Inc.                **Page 7 of 14**                                    NVEDEDL  0402

LOAN #: 80-834543

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the note, another insurer, any reinsurer, any other entity, or affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement

Initials:

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3029 1/01
© 1999-2004 Online Documents, Inc.                     **Page 8 of 14**                            NVEDEDL  0402

provided that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's

Initials: [handwritten initials]

interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

Initials:

LOAN #: 80-834543

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured

Initials: _____

LOAN #: 80-834543

by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat

Initials: [signature]

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3029 1/01
© 1999-2004 Online Documents, Inc.          Page 12 of 14                    NVEDEDL  0402

of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. N/A.

Initials: ______

LOAN #: 80-834543

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
CRISPIN T. RIVERA

_____ (Seal)
NORMA C. RIVERA

State of NEVADA
County of _Clark_____

This instrument was acknowledged before me on _3rd Aug. 06_ (date)
by _Crispin T. Rivera and Norma C. Rivera_____

_____

**(name(s) of person(s)).**

**(Seal, if any)**

BERNADETTE MERFALEN
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 04-92193-1
My Appt. Expires Sep. 18, 2008

_____
(Signature of notarial officer)

Title (and rank): _Notary_____

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3029 1/01
© 1999-2004 Online Documents, Inc.           **Page 14 of 14**                      NVEDEDL  0402

# TRUTH-IN-LENDING DISCLOSURE STATEMENT

**DATE: AUGUST  2, 2006**

GATEWAY BANK, FSB
2306 MERCED STREET
SAN LEANDRO, CA 94577

**LOAN #: 80-834543**
**LOAN AMT:  $584,000.00**

BORROWER(S):
CRISPIN T. RIVERA and NORMA C. RIVERA

PROPERTY ADDRESS: 4734 RANCHO CAMINO COURT
                  LAS VEGAS, NV  89129

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | |
|---|---|---|---|---|
| 7.754 % | $ 1,516,918.84 | $  580,930.80 | $ 2,097,849.64 | |

Your payment schedule will be:

| No. of Payment(s) | Amount of Payment(s) | Due Monthly Beginning | No. of Payment(s) | Amount of Payment(s) | Due Monthly Beginning | No. of Payment(s) | Amount of Payment(s) | Due Monthly Beginning |
|---|---|---|---|---|---|---|---|---|
| 12 | $1,768.50 | 10/01/2006 | | | | | | |
| 12 | $1,901.14 | 10/01/2007 | | | | | | |
| 12 | $2,043.73 | 10/01/2008 | | | | | | |
| 7 | $2,197.01 | 10/01/2009 | | | | | | |
| 437 | $4,608.49 | 5/01/2010 | | | | | | |

Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: THE FOLLOWING INSURANCE IS REQUIRED TO OBTAIN CREDIT: PROPERTY INSURANCE. YOU MAY OBTAIN THIS INSURANCE FROM ANYONE YOU WANT THAT IS REASONABLY ACCEPTABLE TO THE CREDITOR. CREDIT LIFE AND CREDIT DISABILITY INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT.

SECURITY: YOU ARE GIVING A SECURITY INTEREST IN THE PROPERTY LOCATED
          AT: 4734 RANCHO CAMINO COURT, LAS VEGAS, NV  89129.

FILING/RECORDING FEE:      $100.00

LATE CHARGE: IF A PAYMENT IS MORE THAN 15 DAYS LATE, YOU WILL BE CHARGED 5.000% OF THE PAYMENT.

PREPAYMENT: IF YOU PAY OFF EARLY, YOU MAY HAVE TO PAY A PENALTY AND YOU WILL NOT BE ENTITLED TO A REFUND OF PART OF THE FINANCE CHARGE.

ASSUMPTION: SOMEONE BUYING YOUR PROPERTY MAY, SUBJECT TO CONDITIONS, BE ALLOWED TO ASSUME THE REMAINDER OF THE MORTGAGE ON THE ORIGINAL TERMS.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

THE UNDERSIGNED ACKNOWLEDGE RECEIVING AND READING A COMPLETED COPY OF THIS DISCLOSURE. THIS DOCUMENT IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND.

| _Crispin T. Riv_ | 8/8/06 | _Norma C. Rivera_ | 8/8/06 |
|---|---|---|---|
| CRISPIN T. RIVERA | DATE | NORMA C. RIVERA | DATE |

GRZ2 0401

# TRUTH-IN-LENDING DISCLOSURE STATEMENT

**DATE: AUGUST  2, 2006**

**LOAN #: 80-834543**
**LOAN AMT: $584,000.00**

GATEWAY BANK, FSB
2306 MERCED STREET
SAN LEANDRO, CA 94577

BORROWER(S):
CRISPIN T. RIVERA and NORMA C. RIVERA

PROPERTY ADDRESS: 4734 RANCHO CAMINO COURT
             LAS VEGAS, NV  89129

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | |
|---|---|---|---|---|
| 7.754 % | $ 1,516,918.84 | $   580,930.80 | $ 2,097,849.64 | |

Your payment schedule will be:

| No. of Payment(s) | Amount of Payment(s) | Due Monthly Beginning | No. of Payment(s) | Amount of Payment(s) | Due Monthly Beginning | No. of Payment(s) | Amount of Payment(s) | Due Monthly Beginning |
|---|---|---|---|---|---|---|---|---|
| 12 | $1,768.50 | 10/01/2006 | | | | | | |
| 12 | $1,901.14 | 10/01/2007 | | | | | | |
| 12 | $2,043.73 | 10/01/2008 | | | | | | |
| 7 | $2,197.01 | 10/01/2009 | | | | | | |
| 437 | $4,608.49 | 5/01/2010 | | | | | | |

Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: THE FOLLOWING INSURANCE IS REQUIRED TO OBTAIN CREDIT: PROPERTY INSURANCE. YOU MAY OBTAIN THIS INSURANCE FROM ANYONE YOU WANT THAT IS REASONABLY ACCEPTABLE TO THE CREDITOR. CREDIT LIFE AND CREDIT DISABILITY INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT.

SECURITY: YOU ARE GIVING A SECURITY INTEREST IN THE PROPERTY LOCATED
        AT: 4734 RANCHO CAMINO COURT, LAS VEGAS, NV  89129.

FILING/RECORDING FEE:     $100.00

LATE CHARGE: IF A PAYMENT IS MORE THAN 15 DAYS LATE, YOU WILL BE CHARGED 5.000% OF THE PAYMENT.

PREPAYMENT: IF YOU PAY OFF EARLY, YOU MAY HAVE TO PAY A PENALTY AND YOU WILL NOT BE ENTITLED TO A REFUND OF PART OF THE FINANCE CHARGE.

ASSUMPTION: SOMEONE BUYING YOUR PROPERTY MAY, SUBJECT TO CONDITIONS, BE ALLOWED TO ASSUME THE REMAINDER OF THE MORTGAGE ON THE ORIGINAL TERMS.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

THE UNDERSIGNED ACKNOWLEDGE RECEIVING AND READING A COMPLETED COPY OF THIS DISCLOSURE. THIS DOCUMENT IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND.

| _Crispin T. Rivera_ | 8/3/06 | _Norma C. Rivera_ | 8/3/06 |
|---|---|---|---|
| CRISPIN T. RIVERA | DATE | NORMA C. RIVERA | DATE |

GR22 0401

GATEWAY BANK, FSB

2306 MERCED STREET
SAN LEANDRO, CA 94577

BORROWER(S) NAME(S):
  CRISPIN T. RIVERA and  NORMA C. RIVERA

DATE: AUGUST  2, 2006
LOAN#: 80-834543
LOAN AMOUNT:  $584,000.00

PROPERTY ADDRESS:  4734 RANCHO CAMINO COURT
                   LAS VEGAS, NV  89129

## ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| ITEMIZATION OF THE AMOUNT FINANCED OF | | | $580,930.80 |
| NET PROCEEDS FOR FUNDING | | | $576,194.15 |

Ref HUD-1
AMOUNT PAID TO OTHERS ON YOUR BEHALF

| | | | |
|---|---|---|---|
| | RESERVES DEPOSITED WITH LENDER (LESS 0 INC IN PPD) | | $2,429.10 |
| 803 | APPRAISAL FEE | to CORNERSTONE APPRAISAL | $200.00 |
| 815 | ENDORSEMENTS | to NORTH AMERICAN TITLE | $250.00 |
| 1108 | TITLE INSURANCE FEE | to NORTH AMERICAN TITLE | $1,757.55 |
| 1201 | RECORDING FEE | to NORTH AMERICAN TITLE | $100.00 |
| | TOTAL AMOUNT PAID TO OTHERS | | $ 4,736.65 |

ITEMIZATION OF THE PREPAID FINANCE CHARGE

| | | | |
|---|---|---|---|
| 808 | TAX SERVICE FEE | to FIRST AMERICAN TAX SVC | $65.00 |
| 809 | PROCESSING FEE | to GATEWAY BANK, FSB | $500.00 |
| 810 | ADMINISTRATION FEE | to GATEWAY BANK, FSB | $625.00 |
| 811 | WIRE FEE : | to GATEWAY BANK, FSB | $40.00 |
| 812 | COURIER FEE | to NORTH AMERICAN TITLE | $75.00 |
| 813 | FLOOD LIFE OF LOAN CERT. | to FIRST AMERICAN FLOOD | $16.00 |
| 814 | EMAIL FEE | to NORTH AMERICAN TITLE | $50.00 |
| 816 | APPLICATION FEE | to GATEWAY BANK, FSB | $275.00 |
| 1101 | ESCROW FEE : | to NORTH AMERICAN TITLE | $450.00 |
| 901 | INTEREST TO FIRST PAYMENT | 30 @ $ 32.44 = | $973.20 |
| | TOTAL PREPAID FINANCE CHARGE | | $  3,069.20 |

.

.

    The undersigned acknowledge receiving and reading a completed copy of this disclosure. Neither
you nor the creditor previously has become obligated to make or accept this loan.  This disclosure
is not part of your loan contract.

_Crispin T. Riv_ _____
CRISPIN T. RIVERA

_Norma C. Rivera_ _____
NORMA C. RIVERA

© 1996, 2002 Online Documents, Inc.

GIAF1  0209

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | | | |
|---|---|---|---|
| Applicants: | **Crispin T Rivera**<br>**Norma C Rivera** | Prepared By: | |
| Property Address: | **4734 Rancho Camino Ct.**<br>**Las Vegas, NV 89129** | | |
| Application No: | **Rancho_Camino_Property** | Date Prepared: **06/26/2006** | |

| **ANNUAL PERCENTAGE RATE**<br>The cost of your credit as a yearly rate | **FINANCE CHARGE**<br>The dollar amount the credit will cost you | **AMOUNT FINANCED**<br>The amount of credit provided to you or on your behalf | **TOTAL OF PAYMENTS**<br>The amount you will have paid after making all payments as scheduled |
|---|---|---|---|
| **6.932 %** | $ **1,336,923.23** | $ **584,000.00** | $ **1,920,923.23** |

☐ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit

**PAYMENTS:** Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 12 | 1,692.63 | | | | | | | |
| 12 | 1,819.58 | | | | | | | |
| 12 | 1,956.05 | | | | | | | |
| 12 | 2,102.75 | | | | | | | |
| 3 | 2,260.46 | | | | | | | |
| 1 | 2,846.78 | | | | | | | |
| 8 | 3,930.95 | | | | | | | |
| 419 | 4,259.50 | | | | | | | |
| 1 | 4,264.85 | | | | | | | |

☐ **DEMAND FEATURE:** This obligation has a demand feature.

☐ **VARIABLE RATE FEATURE:** This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

**CREDIT LIFE/CREDIT DISABILITY:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

**INSURANCE:** The following insurance is required to obtain credit:

☐ Credit life insurance  ☐ Credit disability  ☑ Property insurance  ☐ Flood insurance

You may obtain the insurance from anyone you want that is acceptable to creditor

☐ If you purchase  ☐ property  ☐ flood insurance from creditor you will pay $ _____ for a one year term.

**SECURITY:** You are giving a security interest in:

☐ The goods or property being purchased  ☐ Real property you already own.

**FILING FEES:** $

**LATE CHARGE:** If a payment is more than _____ days late, you will be charged _____ % of the payment

**PREPAYMENT:** If you pay off early, you

☑ may  ☐ will not  have to pay a penalty.

☐ may  ☑ will not  be entitled to a refund of part of the finance charge.

**ASSUMPTION:** Someone buying your property

☐ may  ☐ may, subject to conditions  ☑ may not  assume the remainder of your loan on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

☑ * means an estimate  ☐ all dates and numerical disclosures except the late payment disclosures are estimates.

** NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| _(signature)_ | 6/26/06 | _(signature)_ | 6/26/06 |
|---|---|---|---|
| Crispin T Rivera | (Applicant) (Date) | Norma C Rivera | (Applicant) (Date) |
| _____ | (Applicant) (Date) | _____ | (Applicant) (Date) |
| _____ | (Lender) (Date) | | |

Calyx Form - til.hp (02/95)

# TRUTH IN LENDING DISCLOSURE STATEMENT

| Creditor | Applicant(s) |
|---|---|
| **GATEWAY BANK**<br>**2305 MERCED STREET**<br>**SAN LEANDRO, CA 94577** | **CRISPIN RIVERA**<br>**NORMA RIVERA** |

| Mailing Address | Property Address |
|---|---|
| **CRISPIN RIVERA**<br>**4734 RANCHO CAMINO CT**<br>**LAS VEGAS, NV 89129** | **4734 RANCHO CAMINO CT**<br>**LAS VEGAS, NV 89129** |

| Loan Number | Preparation Date |
|---|---|
| **80-834543** | **July 19, 2006** |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| E   7.322   % | E$ 1,434,779.10 | E$ 581,752.33 | E$ 2,016,531.43 |

**PAYMENT SCHEDULE:**

| NUMBER OF PAYMENTS | * AMOUNT OF PAYMENTS | MONTHLY PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | * AMOUNT OF PAYMENTS | MONTHLY PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 12 | 1,692.63 | 09/01/2006 | | | |
| 12 | 1,819.58 | 09/01/2007 | | | |
| 12 | 1,956.05 | 09/01/2008 | | | |
| 11 | 2,102.75 | 09/01/2009 | | | |
| 432 | 4,452.13 | 08/01/2010 | | | |
| 1 | 4,461.90 | 08/01/2046 | | | |

* Includes mortgage insurance premiums, excludes taxes, hazard insurance or flood insurance.

**DEMAND FEATURE:** [X] This loan does not have a Demand Feature.    [ ] This loan has a Demand Feature.

**ITEMIZATION:** You have a right at this time to an ITEMIZATION OF AMOUNT FINANCED.
I/We [ ] do [X] do not  want an itemization.

**REQUIRED DEPOSIT:**
[X] The annual percentage rate does not take into account your required deposit.

**VARIABLE RATE FEATURE:**
[X] This Loan has a Variable Rate Feature.  Variable Rate Disclosures have been provided to you earlier.

**SECURITY:** You are giving a security interest in:
**4734 RANCHO CAMINO CT, LAS VEGAS NV 89129**

**ASSUMPTION:** Someone buying this property
[ ] cannot assume the remaining balance due under original mortgage terms.
[X] may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

**FILING / RECORDING FEES:** $

**PROPERTY INSURANCE:**
[X] Property / hazard insurance is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard Insurance [ ] is [X] is not  available through the lender at an estimated cost of _____ for a _____ month term.

**LATE CHARGES:** If your payment is more than  15  days late, you will be charged a late charge of  5.000  % of the overdue payment.

**PREPAYMENT:** If you prepay this loan in full or in part, you
[X] may [ ] will not  have to pay a penalty.
[ ] may [X] will not  be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and payment refunds and penalties.
E  means estimate.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.  I/We understand there is no commitment for the creditor to make this loan and there is no obligation for me/us to accept this loan upon delivery or signing of this disclosure.

| | | | |
|---|---|---|---|
| _Crispin F. Rivera_ | 8/03/06 | _Norma C. Rivera_ | 8/5/06 |
| CRISPIN RIVERA | Date | NORMA RIVERA | Date |
| | | | |
| _____ | _____ | _____ | _____ |
| | Date | | Date |

# Uniform Residential Loan Application
## GATEWAY BANK WHSL-SL

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____

Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☒ Conventional ☐ Other (explain): ☐ FHA ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number 80-834543 |
|---|---|---|---|

| Amount $ 584,000.00 | Interest Rate 2.000 % | No. of Months 480 | Amortization Type: ☐ Fixed Rate ☐ GPM ☒ Other (explain): ARM (type) 1-MTA- |
|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) 4734 RANCHO CAMINO COURT, LAS VEGAS, NV 89129 | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) SEE PRELIMINARY TITLE REPORT | Year Built 2003 |
|---|---|

| Purpose of Loan | ☐ Purchase ☐ Construction ☐ Other (explain): ☒ Refinance ☐ Construction-Permanent | Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 2003 | Original Cost $ 350,000 | Amount Existing Liens $ 402,016 | Purpose of Refinance Cash Out | Describe Improvements ☐ made ☐ to be made N/A Cost: $ |
|---|---|---|---|---|

| This will be held in what Name(s) CRISPIN T RIVERA NORMA C RIVERA | Manner in which Title will be held HUSBAND AND WIFE AS JOINT TENANTS | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) Equity from Subject Property |
|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name (include Jr. or Sr. if applicable) | CRISPIN T RIVERA | NORMA C RIVERA |
| Social Security Number | 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 | 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 |
| Home Phone (incl. area code) | (702) 656-0033 | (702) 656-0033 |
| DOB (MM/DD/YYYY) | 12/05/1942 | 06/05/1945 |
| Yrs. School | 16 | 16 |

| Borrower | Co-Borrower |
|---|---|
| ☒ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | ☒ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated |
| Dependents (not listed by Co-Borrower) no. 0 ages | Dependents (not listed by Borrower) no. 0 ages |
| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent ___ No. Yrs. 4734 RANCHO CAMINO COURT LAS VEGAS, NV 89129 | Present Address (street, city, state, ZIP) ☒ Own ☐ Rent 3 No. Yrs. 4734 RANCHO CAMINO COURT LAS VEGAS, NV 89129 |
| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer | INTEGRITY CHRYSLER JEEP DODGE 6770 S REDWOOD LAS VEGAS, NV 89118 | COMMUNITY COLLEGE OF SOUTHERN NV 6375 W CHARLESTON BLVD LAS VEGAS, NV 89146 |
| Self Employed | ☐ | ☐ |
| Yrs. on this job | 1M | 6M |
| Yrs. employed in this line of work/profession | 20Y | 30Y |
| Position/Title/Type of Business | A/R ASST OFFICE MANAGER | RN INSTRUCTOR |
| Business Phone (incl. area code) | (702) 870-9793 | (702) 651-5652 |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer | See Schedule of Other Employment | |
| Self Employed | ☐ | ☐ |
| Dates (from – to) | | |
| Monthly Income | $ | $ |
| Position/Title/Type of Business | | |
| Business Phone (incl. area code) | | |

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer | | |
| Self Employed | ☐ | ☐ |
| Dates (from – to) | | |
| Monthly Income | $ | $ |
| Position/Title/Type of Business | | |
| Business Phone (incl. area code) | | |

GATEWAY BANK WHSL-SL

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 5,475.00 | $ 5,285.00 | $ 10,760.00 | Rent | $ | XXXXXXXXX |
| Overtime | | | | First Mortgage (P&I) | 1,540.00 | $ 3,976.28 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 73.00 | 73.00 |
| Dividends/Interest | | | | Real Estate Taxes | 377.00 | 298.71 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | 3,506.00 | 2,960.00 | 6,466.00 | Homeowner Assn. Dues | 97.00 | 82.00 |
| | | | | Other: | | |
| Total | $ 8,981.00 | $ 8,245.00 | $ 17,226.00 | Total | $ 2,087.00 | $ 4,429.99 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-borrower (C) does not choose to have it considered for repaying this loan. | | Monthly Amount |
|---|---|---|---|
| B | LOAN OFFICER | | $ 3,506.00 |
| C | XAN GO DISTRIBUTOR | | 2,960.00 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [X] Jointly [ ] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| | | Name and address of Company (R.E. Loan) | $ Payment/Months | $ |
| List checking and saving accounts below | | WAMU | | |
| Name and address of Bank, S&L, or Credit Union | | 7121 W CRAIG RD | | |
| SILVER STATE SCHOOLS FCU | | LAS VEGAS, NV 89129 | | |
| P.O BOX 12037 | | | | |
| LAS VEGAS, NV 89112 | | Acct. no. 0871746966 | (1,540.00)/ 0 | 402,016* |
| Acct. no. 69847 | $ 65,787.00 | Name and address of Company (R.E. Loan) | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | WASHINGTON MUTUAL | | |
| SILVER STATE SCHOOLS FCU | | | | |
| P.O BOX 12037 | | | | |
| LAS VEGAS, NV 89112 | | Acct. no. 1560870911643 | 570.00 / 0 | 139,387 |
| Acct. no. 109469 | $ 2,200.00 | Name and address of Company (R.E. Loan) | 6 Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | NCB NE ER | | |
| | | | | |
| | | Acct. no. 448961832045 | 216.00 / 0 | 24,921 |
| Acct. no. | $ | Name and address of Company (R.E. Loan) | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | INDYMAC BANK | | |
| | | | | |
| | | Acct. no. 6691006474249 | 739.00 / 0 | 201,977 |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stock & Bonds (Company name/number & description) 401K | $ 83,740 | See Schedule of Charge Accounts | 701.00 | 29,952 |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value Face amount: $ 300,000 | $ 1 | | | |
| Subtotal Liquid Assets | $ 151,728 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 1,305,000 | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) BMW 2001 PLYMOUTH VOYAGE ' 98 | $ 21,981 6,000 | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | XXXXXXXXX |
| Other Assets (itemize) FURNITURES/JEWELRY | $ 75,000 | Job Related Expense (child care, union dues, etc.) | $ | XXXXXXXXX |
| | | Total Monthly Payments | $ 2,226.00 | XXXXXXXXX |
| Total Assets a. | $ 1,559,709 | Net Worth (a minus b) ► $ 761,446 | Total Liabilities b. | $ 798,263 |

Freddie Mac Form 65 7/05
Borrower's Initials
Page 2 of 4
GENESIS 2000, INC. * W17.0 * (800) 882-0504
Fannie Mae Form 1003 7/05
Co-Borrower's Initials

## GATEWAY BANK WHSL-SL

### VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 4734 RANCHO CAMINO COURT LAS VEGAS, NV 89129 | O/D SFR | $730,000 | $402,016 | $0.00 | $1,540.00 | $547.00 | $0.00 |
| 2510 GARDENIA FLOWER NORTH LAS VEGAS, NV 89031 | R SFR | 275,000 | 139,387 | 1,050.00 | 570.00 | 205.00 | 12.50 |
| 5153 ELMIRA DR LAS VEGAS, NV 89110 | R SFR | 300,000 | 226,898 | 1,250.00 | 955.00 | 168.00 | -165.50 |
| | Totals | $1,305,000 | $768,301 | $2,300.00 | $3,065.00 | $920.00 | -173.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

### VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 402,016.00 |
| e. Estimated prepaid items | 8,601.63 |
| f. Estimated closing costs | 2,171.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 412,788.63 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) Paid Charges in GFE | 200.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 584,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 584,000.00 |
| p. Cash to Borrower (subtract j, k, l & o from i) | 171,411.17 |

### VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes No | Co-Borrower Yes No |
|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ ☒ | ☐ ☒ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ ☒ | ☐ ☒ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ ☒ | ☐ ☒ |
| d. Are you a party to a lawsuit? | ☐ ☒ | ☐ ☒ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ ☒ | ☐ ☒ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ ☒ | ☐ ☒ |
| h. Is any part of the down payment borrowed? | ☐ ☒ | ☐ ☒ |
| i. Are you a co-maker or endorser on a note? | ☐ ☒ | ☐ ☒ |
| j. Are you a U.S. citizen? | ☒ ☐ | ☒ ☐ |
| k. Are you a permanent resident alien? | ☐ ☒ | ☐ ☒ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☒ ☐ | ☒ ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☒ ☐ | ☒ ☐ |
| (1) What type of property did you own – principal residence (PR), second home (SH), or investment property (IP)? | PR | PR |
| (2) How did you hold title to the home – solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | SP |

### IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature X | Date 8/03/06 | Co-Borrower's Signature X | Date 8/3/06 |
|---|---|---|---|

### X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, the lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

**BORROWER** ☐ I do not wish to furnish this information

| Ethnicity: | ☐ Hispanic or Latino | ☒ Not Hispanic or Latino |
|---|---|---|
| Race: | ☐ American Indian or Alaska Native | ☒ Asian ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander | ☐ White |
| Sex: | ☐ Female | ☒ Male |

**CO-BORROWER** ☐ I do not wish to furnish this information

| Ethnicity: | ☐ Hispanic or Latino | ☒ Not Hispanic or Latino |
|---|---|---|
| Race: | ☐ American Indian or Alaska Native | ☒ Asian ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander | ☐ White |
| Sex: | ☒ Female | ☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) JUDITH LANGEN | Name and Address of Interviewer's Employer |
|---|---|---|
| ☒ Face-to-face interview | Interviewer's Signature | GATEWAY BANK WHSL-SL |
| ☐ Mail | Date | 2305 MERCED STREET |
| ☐ Telephone | Interviewer's Phone Number (incl. area code) | SAN LEANDRO CA 94577 |
| ☐ Internet | | |

Freddie Mac Form 65 7/05   Page 3 of 4   Fannie Mae Form 1003 7/05

GENESIS 2000, INC. • "W17.0" • (800) 882-0504

AUG-02-2006  13:34  Gateway Bank

# Continuation Sheet/Residential Loan Application

## GATEWAY BANK WHSL-SL

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>**CRISPIN T RIVERA** | Agency Case Number: |
|---|---|---|
| | Co-Borrower:<br>**NORMA C RIVERA** | Lender Case Number:<br>**60-934643** |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature<br>X  *Crispin T. Rivera* | Date<br>8/03/06 | Co-Borrower's Signature<br>X  *Norma C. Rivera* | Date<br>8/8/06 |
|---|---|---|---|

Freddie Mac Form 65  7/05                    Page 4 of 4                    Fannie Mae Form 1003  7/05

AUG-02-2006 13:17 Gateway Bank 5185870307 P.07/24

## GATEWAY BANK WHSL-SL

| | | |
|---|---|---|
| Borrower: **CRISPIN T RIVERA** | | Agency Case Number: |
| Co-Borrower: **NORMA C RIVERA** | | Lender Case Number: **60-834543** |

### SCHEDULE OF CHARGE ACCOUNTS AND OTHER LOANS

| B/C | Name and address of Company | Payment/Months | Unpaid Balance |
|---|---|---|---|
| B | **CAP ONE BK** <br><br> Charge Acct No. 529149193265 | 10.00 / 0 | 245 |
| B | **CITI CARDS** <br><br> Charge Acct No. 5466160057822573 | 29.00 / 0 | 1,323 |
| B | **PACIFIC MONARCH RESORT** <br><br> Charge Acct No. 15028564 | 176.00 / 0 | 6,219 |
| B | **CHASE** <br><br> Charge Acct No. 4266660048325639 | 10.00 / 0 | 194 |
| B | **COMMUNITY ONE FCU** <br><br> Acct. No. 4380870011 | 474.00 / 0 | 21,981 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statement concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X *Crispin T. Rivera* | 8/03/06 | X *Norma C. Rivera* | 8/3/06 |

GENESIS 2000, INC. ™ W17.0 ™ (800) 882-0504

Page 1 of 1

AUG-02-2006  13:03   Gateway Bank   P.88/88   F-168/24

## GATEWAY BANK WHSL-SL

| | | |
|---|---|---|
| **Borrower:** CRISPIN T RIVERA | | **Agency Case Number:** |
| **Co-Borrower:** NORMA C RIVERA | | **Lender Case Number:** 80-834543 |

### SCHEDULE OF OTHER EMPLOYMENT

| Name & Address of Employer | Self Employed | Dates (from - to) | Name & Address of Employer | Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| UNITED SUZUKI MITSUBISHI 2100 S DECATUR BLVD LAS VEGAS, NV 89102 | ☐ | 04/01/06 06/01/06 Monthly Income $ 5,100 | XANGO LLC P.O BOX 708670 SANDY, UT 84070 | ☒ | 12/01/03 Present Monthly Income $ 2,960 |
| Position/Title/Type of Business CONTROLLER | Business Phone (Incl. area code) (702) 651-6340 | | Position/Title/Type of Business INDEPENDENT DISTRIBUTOR | Business Phone (Incl. area code) (801) 816-8000 | |
| INTEGRITY CHRYSLER JEEP DODGE 5770 S REDWOOD ST LAS VEGAS, NV 89118 | ☐ | 06/01/05 04/01/06 Monthly Income $ 4,850 | PLAZA REGENCY 6021 W CHEYENNE AVE LAS VEGAS, NV 89108 | ☐ | 11/01/99 12/01/05 Monthly Income $ 5,800 |
| Position/Title/Type of Business A/R ASST CONTROLLER | Business Phone (Incl. area code) (702) 870-9793 | | Position/Title/Type of Business ASST DIRECTOR OF NURSING | Business Phone (Incl. area code) (702) 396-1400 | |
| DESERT AUTOMOTIVE 6300 W SAHARA AVE LAS VEGAS, NV 89146 | ☐ | 03/01/00 06/01/05 Monthly Income $ 4,755 | Name & Address of Employer | ☐ | Dates (from - to) Monthly Income $ |
| Position/Title/Type of Business OFFICE MANAGER | Business Phone (Incl. area code) (702) 871-4111 | | Position/Title/Type of Business | Business Phone (Incl. area code) | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statement concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature X *Crispin T Rivera* | Date 8/03/06 | Co-Borrower's Signature X *Norma C. Rivera* | Date 8/3/06 |
|---|---|---|---|

GENESIS 2000, INC. • W17.0 • (800) 882-0504

Page 1 of 1

Funding Suspension Report

@ 001

# Funding Suspension Report AS OF 08/24/2006
## Gateway Bank, FSB

### Click here to download

| Seller Loan# | CHL Loan# | Borrower Name | Suspension Description | Team Name | Team FAX # | Susp Type | Created Date & Time | Commitment Expiration Date | Loan Type | Committ /Trade# | Loan Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 80834543 | 130408282 | rivera, crispin | Loan Purpose for cash out from 1003 is missing. Provide HMDA Seller's Cert. or corrected 1003 listing one of the following selections: 1) Home improvement, 2) Debt consolidation, 3) Purchase of other property, 4) Payoff of other mortgage, or 5) Other. | Prime-Western Team Kapla | (888) 200-7594 | Pre | 08/23/2006 4:54:47 PM | 09/25/2006 12:00:00 AM | Regular | 3151645 | $584,000.00 |
| 80834543 | 130408282 | rivera, crispin | The monthly amount for Hazard premium on the HUD-1 does not match the first payment letter. The escrow balance on the initial escrow account disclosure statement does not match the HUD-1. Please clarify and provide corrected documentation. | Prime-Western Team Kapla | (888) 200-7594 | Pre | 08/23/2006 4:54:47 PM | 09/25/2006 12:00:00 AM | Regular | 3151645 | $584,000.00 |
| 80834543 | 130408282 | rivera, crispin | Due to the type of Loan Program, the loan must fund on or before 15th of the first pmt month. If the 1st Pmt Dt lapses, provide copy of pmt coupon or notice to borr reflecting increased int rate in effect at time of int rate clg & correct pmt options. | Prime-Western Team Kapla | (888) 200-7594 | Pre | 08/23/2006 4:54:47 PM | 09/25/2006 12:00:00 AM | Regular | 3151645 | $584,000.00 |

**Grand total: 3**

If the loan is not purchased by the Target Funding Date, a roll fee will be assessed.

If the loan is not purchased by the 15th of the month, a payment history may be required.

**For additional information, please call the National Service Center at (800) 394-4554.**

The information provided is intended for use by mortgage professionals and financial institutions regarding secondary transactions only. Rates and programs subject to change without notice.

Copyright © 2006, Countrywide® Home Loans, Inc. All Rights Reserved.
Trade/service marks are the property of Countrywide Financial Corporation, and/or its subsidiaries.

08/24/2006  12:15  FAX  5106958022

CRISPIN T RIVERA
NORMA C RIVERA
4734 RANCHO CAMINO CT
LAS VEGAS NV 89129

ACCOUNT STATEMENT

80 834543  1          PAGE    1

8-15-06 TO  8-24-06

| ACCRUAL RATE | REGULAR PAYMENT | DUE DATE |
|---|---|---|
| 2.000 | 2,162.92 | 10-01-06 |

| DATE | TRANSACTION | -------------DESCRIPTIONS-------------<br>AMOUNT | AMOUNT | BALANCE |
|---|---|---|---|---|
| AUG 15 06 | OPEN NEW LOAN | PRINCIPAL | 584,000.00 | 584,000.00 |
| AUG 15 06 | PREPAID INTEREST | INTEREST | 713.68 | 584,000.00 |
| AUG 15 06 | CREDIT FIELD | FIRST RESERVE | 1,279.44 | 584,000.00 |

****** TOTALS ******

| | | AMOUNT | BALANCE |
|---|---|---|---|
| PRINCIPAL | | 584,000.00 | 584,000.00 |
| INTEREST | | 713.68 | |
| FIRST RESERVE | | 1,279.44 | 1,279.44 |

Negotiated Trade Confirmation                    7/31/2006                    *Riyana*

Gateway Bank, FSB
2306 Merced Street                                                    80 - 834543
San Leandro, CA 94577
Attn: Ron Klehn                                                      40 Yr ( .25 Margin)

| Date of Trade: | 7/31/2006 | | Trade Amount: | $ 12,500,000.00 |
| File Due Date: | 9/14/2006 | | Delivery Variance: | +/- 10% |
| Loans must fund by: | 9/25/2006 | | Delivery Type: | Bulk locks |
| Loan Program: | NonConf ARM 1m MTA PayOption | | Minimum Start Rate: | 1.0% |

Prepay Option:    No Prepay

Commitment #:                         1yr Hard Prepay                    3yr Hard Prepay
                                                                        3151645

| Margin | Released Price | Margin | Released Price | Margin | Released Price |
|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | | |
| N/A | N/A | N/A | N/A | 2.2 | 100.875 |
| N/A | N/A | N/A | N/A | 2.275 | 101.125 |
| N/A | N/A | N/A | N/A | 2.35 | 101.375 |
| N/A | N/A | N/A | N/A | 2.425 | 101.5 |
| N/A | N/A | N/A | N/A | 2.5 | 101.75 |
| N/A | N/A | N/A | N/A | 2.575 | 102 |
| N/A | N/A | N/A | N/A | 2.65 | 102.25 |
| N/A | N/A | N/A | N/A | 2.725 | 102.5 |
| N/A | N/A | N/A | N/A | 2.8 | 102.875 |
| N/A | N/A | N/A | N/A | 2.875 | 103.125 |
| N/A | N/A | N/A | N/A | 2.95 | 103.375 |
| N/A | N/A | N/A | N/A | 3.075 | 103.625 |
| N/A | N/A | N/A | N/A | 3.2 | 103.875 |
| N/A | N/A | N/A | N/A | 3.325 | 104.125 |
| | | N/A | N/A | 3.45 | 104.25 |
| | | N/A | N/A | 3.575 | 104.375 |
| | | N/A | N/A | | |

- .25 (HITS)
+ .25 (HITS BACK)
103.375

**Fees/Adjustments:**

| | |
|---|---|
| Loan Funding Fee: | $150.00 |
| Loan Tax Service Fee: | Per CLD Sellers Guide |
| Flood Insurance Fee: | Per CLD Sellers Guide |
| % trade no ppy | 0 % |
| % trade 1yr ppy | 0 % |
| % trade 3yr ppy | 100 % |
| Eligible for Note Rate Financing thru CWL? | |

All loans subject to applicable adjustments per daily rate sheet as of date of trade:

Except as expressly provided in this letter of confirmation (the "Negotiated Trade Confirmation"). Seller agrees to deliver the Mortgage Loans pursuant to the requirements and under the terms and conditions of the Loan Purchase Agreement, as amended (the "LPA") executed by the parties and Countrywide's Correspondent Lending Division Seller Manual (the "Guide"). Should there be any conflict between the terms of the Confirmation and the LPA or Guide, the terms of this Confirmation shall prevail. Please acknowledge your receipt and acceptance of this Confirmation by returning a signed copy to the attention of Donald Reese at fax number (866) 487-3669. Failure to fulfill a 90% delivery will result in a 0.5% pair off fee. Delivery Variance of 10 percentage points on prepay distribution as referenced in this commitment or subject to re-price. Product and attribute distribution is representative of seller's production.

Countrywide Home Loans, Inc

BY:
Michael R. Quinn
Executive Vice President – Prime Products

Gateway Bank, FSB

By:
Name: *Vano N. Sussman*

A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**SETTLEMENT STATEMENT**

Alliance Title Company
5000 Hopyard Road, #190
Pleasanton, CA 94588

B. TYPE OF LOAN: 2502-0265

| | | | |
|---|---|---|---|
| 1. ☐ FHA | | 2. ☐ FMHA | 3. ■ CONV. UNINS. |
| 4. ☐ VA | 5. ☐ | 6. ☐ CONV. INS. | |

6. ESCROW FILE NUMBER:
11483907-403 DM

7. LOAN NUMBER:
80-834400

8. MORTGAGE INSURANCE CASE NUMBER:

**FINAL**

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(P.O.C)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME OF BORROWER: Fernando Franco and Sonia Franco

ADDRESS OF BORROWER: 6609 Larkspur Way
Bakersfield, CA 93306

E. NAME OF SELLER: Fernando Franco

ADDRESS OF SELLER:

ALLIANCE TITLE COMPANY
hereby certifies this is a true
and correct copy of the original.

Authorized Signature

B. NAME OF LENDER: Gateway Bank, FSB
ADDRESS OF LENDER: 2306 Merced St.,
San Leandro, CA 94577

G. PROPERTY LOCATION: 6609 Larkspur Way
Bakersfield, CA 93306
Kern

H. SETTLEMENT AGENT: Alliance Title Company
PLACE OF SETTLEMENT: 6000 Hopyard Road, #190, Pleasanton, CA 94588

I. SETTLEMENT DATE: 08/14/2006      PRORATION DATE:      FUNDING DATE: 08/11/2006

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to Borrower (line 1400) | 5,159.94 | 403. | |
| 104. Payoff to First Franklin Loan | 92,987.79 | 404. | |
| 105. Payoff to First Franklin Loan | 22,971.30 | 405. | |
| Adjustments For Items Paid By Seller In Advance: | | Adjustments For Items Paid By Seller In Advance: | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| **120. Gross Amount Due from borrower:** | 121,119.03 | **420. Gross Amount Due to Seller** | 0.00 |
| **200. Amounts Paid By or in behalf of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 176,000.00 | 502. Settlement charges to Seller (line 1400) | 0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments For Items Unpaid By Seller: | | Adjustments For Items Unpaid By Seller: | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 176,000.00 | 520. Total Reductions in Amount Due Seller | 0.00 |
| **300. Cash At Settlement from/to Borrower:** | | **600. Cash At Settlement to/from Seller:** | |
| 301. Gross amount due from Borrower (line 120) | 121,119.03 | 601. Gross amount due to Seller (line 420) | 0.00 |
| 302. Less amount paid by/for Borrower (line 220) | 176,000.00 | 602. Less reductions in amount due to Seller (line 52 | 0.00 |
| 303. Cash TO Borrower: | 54,880.97 | 603. Cash TO/FROM Seller: | 0.00 |

Hudc.rpt (11/04/2005)                    Printed by Danielle Mack on 08/14/2006 at 01:15:43 PM

## L. SETTLEMENT CHARGES:

| 700. Total Sales/Broker's Commission | | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|
| Based on Price $ | | | |
| Division of Commission (line 700) follows: | | | |
| 701. $ | | | |
| 702. $ | | | |
| $ | | | |
| 703. Commission paid at settlement | | | |
| 704. | | | |
| **800. Items Payable in Connection With Loan:** | | | |
| 801. Loan Origination Fee % to Gateway Bank, FSB | | 0.00 | |
| 802. Loan Discount Fee | | | |
| 803. Appraisal Fee | | | |
| 804. Credit Report | | | |
| 805. Lenders Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee | | | |
| 807. Assumption Fee | | | |
| 808. Processing Fee to First Financial | | 995.00 | |
| 809. Tax Service to First American Tax Svcs. | | 65.00 | |
| 810. | | | |
| 811. Broker Fee to First Financial | | 545.00 | |
| 812. Flood Life of Loan to First American Flood Svcs. | | 16.00 | |
| 813. Administration Fee to Gateway Bank, FSB | | 825.00 | |
| 815. Wire Fee to Gateway Bank, FSB | | 40.00 | |
| Yield Spread Pd by Lender POC to First Financial | ( $5,280.00) | | |
| Yield Spread Premium to First Financial | | | |
| **900. Items Required by Lender To Be Paid In Advance:** | | | |
| 901. Interest from 08/11/06 to 09/01/06 @$9.78/day | | 216.16 | |
| 902. Mortgage Insurance Premium | | | |
| 903. Hazard Insurance Premium | | | |
| 904. | | | |
| 905. | | | |
| **1000. Reserves Deposited With Lender:** | | | |
| 1001. Hazard Insurance 5 months @$24.36 per month | | 121.80 | |
| 1002. Mortgage Insurance | | | |
| 1003. City Property Taxes | | | |
| 1004. County Property Taxes 8 months @$144.78 per month | | 1,158.24 | |
| 1005. Annual Assessments | | | |
| 1006. | | | |
| 1007. | | | |
| 1008. Aggregate Adjustment    months @$ | | 219.28- | |
| **1100. Title Charges:** | | | |
| 1101. Settlement or closing fee to Alliance Title Company | | 350.00 | |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | | |
| 1104. Title insurance binder | | | |
| 1105. Document preparation | | | |
| 1106. Notary Fees | | | |
| 1107. Attorney's Fees | | | |
| (includes above item numbers: ) | | | |
| 1108. Title Insurance | | | |
| (Included above item numbers: ) | | | |
| 1109. Lender's coverage $    202,400.00 to Alliance Title Company | | 631.00 | |
| 1110. Owner's Coverage | | | |
| 1111. Endorsements 103.1 to Alliance Title Company | | 50.00 | |
| 1112. Delivery/Courier Deliveries to Alliance Title Company | | 75.00 | |
| 1113. Wire Fee to Alliance Title Company | | 75.00 | |
| 1114. email doc Fee to Alliance Title Company | | 50.00 | |
| **1200. Government Recording and Transfer Charges:** | | | |
| 1201. Recording Fees: Deed$ Mortgage $    67.00 Release $ | | 67.00 | |
| 1202. City/County tax/stamps | | | |
| 1203. State tax/stamps | | | |
| 1204. City Transfer Tax | | | |
| 1205. County Transfer Tax | | | |
| 1206. | | | |
| 1207. | | | |
| **1300. Additional Settlement Charges:** | | | |
| 1301. Survey | | | |
| 1302. Pest Inspection | | | |
| 1303. | | | |
| 1304. Payoff Debt to Collec. #2610 (NEED INFO) | | 100.00 | |
| 1305. | | | |
| 1306. Signing Services to Maurel L. Zavala | | 200.00 | |

Hudo.rpt (11/04/2005)

| | | | |
|---|---|---|---|
| 1307. | | | |
| 1400. Total Settlement Charges (Enter on line 103,Section J -and- line 602, Section K) | | 5,169.94 | |

Printed by Danielle Mack on 08/14/2006 at 01:15:43 PM

## BREAKDOWN OF NEW LOANS

| Description | Buyer Amount | Seller Amount |
|---|---|---|
| Gateway Bank, FSB, 2306 Merced St., San Leandro, CA 94577, Loan# 80-634400 | 176,000.00 | |
| Loan# | | |
| Total of New Loans. | 176,000.00 | |

## BREAKDOWN OF PAYOFF ON HUD line 104

Payoff to:   **First Franklin Loan Services**          Loan #:  1044295506

| Description | Amount |
|---|---|
| Principal Balance | 90,061.81 |
| Interest | 562.71 |
| Prepayment Penalty | 2,010.99 |
| Impound Overdraft | 301.28 |
| Recon Fee | 21.00 |
| Fax Fee | 30.00 |
| Total Payoff | 92,987.79 |

**Total as shown on HUD line #104.**          92,987.79

## BREAKDOWN OF PAYOFF ON HUD line 105

Payoff to:   **First Franklin Loan Services**          Loan #:  1044295507

| Description | Amount |
|---|---|
| Principal Balance | 22,758.57 |
| Interest | 151.53 |
| Unpaid Late Fees | 10.20 |
| Recon Fee | 21.00 |
| Fax Fee | 30.00 |
| Total Payoff | 22,971.30 |

**Total as shown on HUD line #105.**          22,971.30

OMB NO. 2502-0265

| A. | | B. TYPE OF LOAN |
|---|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | 1.☐FHA    2.☐FmHA    3.☒CONV. UNINS.    4.☐VA    5.☐CONV. INS. | |

**SETTLEMENT STATEMENT**

| 6. FILE NUMBER | 7. LOAN NUMBER |
|---|---|
| NV506-53954BDH | 80-834543 |

8. MORTGAGE INS CASE NUMBER

C.  NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown.
Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.
1.0   3/88   (NV506-53954BDH.PFD/NV506-53954BDH/31)

| D. NAME AND ADDRESS OF BORROWER | E. NAME AND ADDRESS OF SELLER | F. NAME AND ADDRESS OF LENDER |
|---|---|---|
| Crispin T. Rivera<br>Norma C. Rivera<br>4734 Rancho Camino Court<br>Las Vegas, NV 89129 | | Gateway Bank, FSB<br>2306 Merced Street<br>San Leandro, CA 94577 |

| G. PROPERTY LOCATION | H. SETTLEMENT AGENT   54-2085989 | I. SETTLEMENT DATE |
|---|---|---|
| 4734 Rancho Camino Court<br>Las Vegas, NV 89129<br>Clark County, Nevada | North American Title Company | August 8, 2006 |
| | PLACE OF SETTLEMENT | |
| | 3167 E. Warm Springs Road<br>Las Vegas, NV  89120 | |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 9,863.66 | 403. | |
| 104. Refi Payoff 1st Loan to Washington Mutual/0871 | 408,589.67 | 404. | |
| 105. Refi Payoff 2nd Loan to Silver State Schools Cre | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes          to | | 406. City/Town Taxes          to | |
| 107. County Taxes          to | | 407. County Taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. Sewer | | 409. | |
| 110. HOA | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 418,453.33 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 584,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. Buyer's Closing Funds | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes          to | | 510. City/Town Taxes          to | |
| 211. County Taxes          to | | 511. County Taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 584,000.00 | **520. TOTAL REDUCT. AMT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 418,453.33 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 584,000.00 ) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| 303. CASH ( FROM ) ( X TO ) BORROWER | 165,546.67 | 603. CASH ( TO ) ( FROM ) SELLER | |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.

Borrower   *Crispin T. Rivera* (signature)
Crispin T. Rivera

*Norma C. Rivera* (signature)
Norma C. Rivera

This is to certify that this is a true
and correct copy of the original
NORTH AMERICAN TITLE COMPANY
By

**ESTIMATE**

HUD-1 (3-86) RESPA, HB4305.2

## L. SETTLEMENT CHARGES

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **700. TOTAL COMMISSION Based on Price** $        @        % | | | |
| *Division of Commission (line 700) as Follows:* | | | |
| 701. $        to | | | |
| 702. $        to | | | |
| 703. Commission Paid at Settlement | | | |
| 704. | to | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee        % | to | | |
| 802. Loan Discount        % | to | | |
| 803. Appraisal Fee | to  Cornerstone Appraisal        POC $200.00b | | |
| 804. | to | | |
| 805. | to | | |
| 806. | to | | |
| 807. | to | | |
| 808. | | | |
| 809. | | | |
| 810. Flood Life of Loan | to  First American Flood | 16.00 | |
| 811. Tax Service Fee | to  First American Tax Service | 66.00 | |
| 812. | | | |
| 813. Application Fee | to  Gateway Bank, FSB | 275.00 | |
| 814. PRocessing fee | to  Gateway Bank, FSB | 500.00 | |
| 815. Admin fee | to  Gateway Bank, FSB | 625.00 | |
| 816. Wire Fee | to  Gateway Bank, FSB | 40.00 | |
| 817. | | | |
| 818. | | | |
| 819. | | | |
| 820. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From  08/08/06  to  09/01/06  @  $     32.440000/day  (     24 days        %) | | 778.56 | |
| 902. Mortgage Insurance Premium for        months to | | | |
| 903. Hazard Insurance Premium for     1.0   years  to ***Waiting for invoice*** | | 1,000.00 | |
| 904. Flood Insurance        years | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance        9.000   months  @  $  170.33  per month | | 1,532.97 | |
| 1002. Mortgage Insurance        @  $        per | | | |
| 1003. City/Town Taxes        @  $        per | | | |
| 1004. County Taxes        3.000   months  @  $  298.71  per month | | 896.13 | |
| 1005. Assessments        @  $        per | | | |
| 1006. Flood Insurance        @  $        per | | | |
| 1007.        @  $        per | | | |
| 1008.        @  $        per | | | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or Closing Fee | to  North American Title Company | 250.00 — | |
| 1102. Abstract or Title Search | to | | |
| 1103. Title Examination | to | | |
| 1104. Title Insurance Binder | to | | |
| 1105. Document Prep | to | | |
| 1106. Notary Fees | to | | |
| 1107. Loan  Tie in Fee | to | | |
| (includes above item numbers:        ) | | | |
| 1108. Title Insurance | to  North American Title Insurance Company | 1,552.20 | |
| (includes above item numbers:        ) | | | |
| 1109. Lender's Coverage        $        672,000.00        1,552.20        115% | | | |
| 1110. Owner's Coverage        $ | | | |
| 1111. Endorsements-100/116/8.1/111.6 | to  North American Title Company        103.5/100.12/100.13 | 200.76 — | |
| 1112. | | | |
| 1113. | | | |
| 1114. Overnight Mail Fee | to  North American Title Company | 75.00 | |
| 1115. | | | |
| 1116. Telecommunicated Docs/Wire fee | to  North American Title Company | 50.00 — | |
| 1117. | | | |
| 1118. | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees: Deed $        ; Mortgage $     61.00;        Releases $ | | 61.00 — | |
| 1202. City/County Tax/Stamps: RPTT        $        ; Deed of Trust        $ | | | |
| 1203. State Tax/Stamps:        RPTT        $        ; Deed of Trust        $ | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey | to | | |
| 1302. Pest Inspection | to | | |
| 1303. | | | |
| 1304. PAD | to  refundable @ coe | 100.00 | |
| 1305. See add'l disb. exhibit | to | 1,846.04 | |
| **1400. TOTAL SETTLEMENT CHARGES  (Enter on Lines 103, Section J and 502, Section K)** | | 9,863.66 | |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

North American Title Company, Settlement Agent

## BORROWER ADDITIONAL DISBURSEMENTS EXHIBIT

**Borrower:** Crispin T. Rivera and Norma C. Rivera
**Lender:** Gateway Bank, FSB
**Settlement Agent:** North American Title Company
(702)853-6282
**Place of Settlement:** 3167 E. Warm Springs Road
Las Vegas, NV 89120
**Settlement Date:** August 8, 2006
**Disbursement Date:**
**Property Location:** 4734 Rancho Camino Court
Las Vegas, NV 89129
Clark County, Nevada

| PAYEE/DESCRIPTION | NOTE/REF NO | BORROWER |
|---|---|---|
| Clark County Treasurer Taxes 1st qtr 2006-07 | 1st Installment | 923.02 |
| Clark County Treasurer Taxes 2nd qtr 2006-07 | 2nd Installment | 923.02 |
| | **Total Additional Disbursements shown on Line 1305   $** | **1,846.04** |



**HOME LOANS**

Attn: Home Retention Division
Countrywide Modification
100 Beecham Drive
Pittsburgh, PA 15205

**Notice Date:** January 30, 2009

**Account No.:** 130406282

CRISPIN T RIVERA and NORMA C RIVERA
4734 Rancho Camino Ct
Las Vegas, NV 89129

**Property Address:**
4734 RANCHO CAMINO COURT, LAS
VEGAS, NV 89129

---

**IMPORTANT MESSAGE ABOUT YOUR LOAN**

We are pleased to advise you that your loan modification has been approved. In order for the modification to be valid, the enclosed documents need to be signed and returned.

The following amounts will be added to your current principal balance, resulting in a modified principal balance of $619,451.91 prior to your first payment date. The amount added to your loan is:

| | |
|---|---|
| Interest : | $5,371.30 |
| Fees: | $0.00 |
| Escrow: | $0.00 |
| Total: | $5,371.30 |

Your new modified monthly payment will be $2,567.80, effective with your April 1, 2009 payment. This payment is subject to change if your escrow account is reanalyzed or if you have a step rate, interest only or adjustable rate loan type. Your current interest rate is 5.25%. Your new interest rate will be 4.25%. We are fixing this rate for a period of 5 years. Please be advised your monthly payment will increase significantly when the interest-only period expires, and you are required to make principal and interest payments for the remaining term of the loan. This is sometimes referred to as payment shock. Your payment will increase significantly because we are adding the amounts indicated above to your unpaid principal balance, which will cause additional interest to accrue each month, and each payment will also include a larger component of principal. Your loan also contains a variable rate feature. Please read your loan modification and loan documents carefully to understand how your payment may increase even more, subject to the terms of your original note, as the interest rate on your loan fluctuates with the changing market. This Agreement will bring your loan current; however, you are still required to pay back the entire unpaid principal by the maturity date for your loan.

We encourage you to remit more than the interest-only payment when possible to reduce the impact of the Agreement on your future monthly payments. Please see the additional Payment Choices in your Interest-Only monthly statement for ways to help you pay-down principal. Paying down principal now will help both to reduce the amount of interest you owe now by reducing your new Interest-Only payment and will reduce your new monthly payment of principal and interest that will be due at the end of the Interest-Only period.

Your new reduced interest rate will be effective as of March 1, 2009 and it will remain in effect until February 1, 2014.

A breakdown of your payment is as follows:

| | |
|---|---|
| Interest Only: | $2,193.89 |
| Escrow: | $373.91 |
| Total Payment: | $2,567.80 |



The HOPE Team
CHL Loan #: 130406282

Page 1 of 5

WDGCSCOV LMS 8120 01/30/2009

**WHAT YOU SHOULD DO**

Please sign, date and return one (1) complete set of enclosed documents to us in the re-usable Fed-Ex envelope.  Please use the return label provided and mail no later than March 1, 2009 to the following address:



**HOME LOANS**

Countrywide Modification, 100 Beecham Drive, Pittsburgh, PA 15205

**If you have questions, Loan consultants are standing by from 8:00 AM until 9:00 PM CT Monday through Friday, and 8:00 AM until 3:00 PM CT on Saturday except holidays at 877-665-6866.**

This offer is contingent upon Countrywide receiving relief from the Automatic Stay for any bankruptcy in which the property referred to in the Loan Modification Agreement is included at the time of the modification.

If any issues arise between the date of this commitment and the date on which all of the terms and conditions of this letter are finalized, including, but not limited to, deterioration in the condition of the property, lawsuits, liens, additional expenses and defaulted amount, then we may terminate this offer and pursue all collection action, including foreclosure.

This Letter does not stop, waive or postpone the collection actions, or credit reporting actions we have taken or contemplate taking against you and the property.  In the event that you do not or cannot fulfill ALL of the terms and conditions of this letter no later than **March 1, 2009**, we will continue our collections actions without giving you additional notices or response periods.

The following documents have been enclosed:
**Modification Agreement**-Must be signed in the presence of a Notary.  The notary acknowledgment must be in recordable form.  All parties who own an interest in the property must sign the modification agreement as their name appears.

The following documents may have been included if applicable to your loan:

**California All Purpose Acknowledgment** – This document will only be used if the loan modification agreement is being executed in the state of California.  It will be utilized by a notary of the state of California in place of the notary section contained in the Loan Modification Agreement.

**Bankruptcy Disclosure** – All parties who own an interest in the property must sign the Bankruptcy Disclosure as their name appears.

**THANK YOU FOR YOUR BUSINESS**

**The HOPE Team**

Countrywide is required by law to inform you that this communication is from a debt collector.



The HOPE Team
CHL Loan #: 130408282

WDGCSCOV LMS 8120 01/30/2009

# LOAN MODIFICATION AGREEMENT
## (Interest Only Adjustable Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 30th day of January, 2009, between CRISPIN T RIVERA and NORMA C RIVERA (the "Borrower(s)") and Countrywide (the "Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 29th day of August, 2006 in the amount of $584,000.00, and (2) the Note secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at: 4734 RANCHO CAMINO COURT, LAS VEGAS, NV 89129.

The real property described being set forth as follows:

### SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of the 1st day of March, 2009, the amount payable under the Note or Security Instrument (the "Unpaid Principal Balance") is U.S. $619,451.91, consisting of the amount(s) loaned to the Borrower by the Lender which may include, but not limited to, any past due principal payments, interest, fees and/or costs capitalized to date.

2. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance from the 1st day of March, 2009. The Borrower promises to make monthly payments in the amount of U.S. $2,193.89 beginning on the 1st day of April, 2009. The monthly payment will adjust in accordance with the Note, and any other loan document that is affixed to or incorporated into the Note and Rider and provides for, implements or relates to any change or adjustment in the monthly payment amount under the Note. If on the 1st day of September, 2046 (the "Maturity Date"), the borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3. The Borrower will make such payments at Countrywide, 7105 Corporate Drive, (PTX-B-38), Plano, TX 75024 or at such other place as the Lender may require.

4. Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

5. In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

_____        Dated: _____1/26/09_____
CRISPIN T RIVERA

_____        Dated: _____2/26/09_____
NORMA C RIVERA


STATE OF _____NEVADA_____

COUNTY OF _____CLARK_____

On 2/26/09 before me, _Patricia Pountain_ Notary Public, personally appeared
_Crispin Rivera & Norma Rivera_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Patricia A. Pountain_
Signature

Notary Public - State of Nevada
County of Clark
PATRICIA A. POUNTAIN
My Appointment Expires
No. 00-61128-1        April 1, 2009

P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED



 

**Loan Number**
**0520592710**

ɪ�‖·ɪɪ‖·ᵩᵩɪ‖‖‖·‖ᵩ·‖ᵩ·‖‖‖‖ᵩ·‖‖·‖‖·‖·‖‖ᵩ·‖‖·ɪ‖·ɪɪ‖ᵩ·ɪ
S-SFRECS20  L-CST-SMS A-0520592710 R-17
P3C0AC00703192 - 297352272 I06384
CRISPIN T RIVERA
NORMA RIVERA
4734 RANCHO CAMINO CT
LAS VEGAS NV 89129-3684

**Property Address**
**4734 Rancho Camino Court**
**Las Vegas, NV 89129**

**Owner of your Loan**
**BANK OF NEW YORK AS TRUSTEE FOR**
**CWALT 2006-OA14**

2/14/2014

### Notice of Transfer of Servicing

Dear Valued Customer:

Effective March 1, 2014, Resurgent Mortgage Servicing will become part of Shellpoint Mortgage Servicing*, a division of New Penn Financial, LLC. This means the servicing of your mortgage loan is being transferred to Shellpoint Mortgage Servicing. This change does not affect any term or condition of the mortgage instruments, other than the terms directly related to the servicing of your loan.

**This change does not impact your mortgage.** There will be little or no impact to you as a result of this transfer. The phone number and mailing addresses you use to contact Resurgent will be the same with Shellpoint. Your loan number will remain the same as will the address you use for payments or correspondence. However, Shellpoint will collect your payments going forward. Shellpoint will start accepting payments received from you on 3/1/2014. If you have any questions about your mortgage loan or this transfer, our contact information is listed below.

- Customer Care Department Phone: (800) 365-7107
- Fax: (866) 467-1137
- Email: loanservicing@shellpointmtg.com
- Website: www.shellpointmtg.com
- Hours of Operation: Monday - Friday / 8am - 10pm EST
  Saturday / 8am - 3pm EST

SEND WRITTEN INQUIRIES TO
Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC  29603-0826

SEND PAYMENTS TO
Shellpoint Mortgage Servicing
P.O. Box 19006
Greenville, SC  29602-9006

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed upon you.

**Key points to remember**
- Your loan number is 0520592710, our records indicate that as of 2/14/2014 this loan has an unpaid principal balance of $619,328.56, and is due for the 3/1/2010 installment
- If you use online bill pay, please be sure to update your bill pay service with Shellpoint's name and mailing address
- If you are on ACH Draft (autopay) that information will transfer to Shellpoint
- This servicing transfer only affects this loan, it does not affect your other loans you may have with Resurgent

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número (800) 365-7107.

*Best Regards,*

*Resurgent Mortgage Servicing and Shellpoint Mortgage Servicing*

### SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.

**Please read the following important notices as they may affect your rights.**

Unless you notify us within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, we will assume this debt is valid. If you notify us in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of us in writing, within 30 days after receiving this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If this debt was discharged in a bankruptcy without a valid reaffirmation, please understand that Resurgent is not attempting to collect the debt from you personally, but is rather seeking to protect the creditor's right in the associated collateral.  Please disregard any contrary provisions contained in this letter and interpret this communication accordingly.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

A menos que usted nos notifique dentro de los 30 días después de recibir este aviso que usted cuestiona la validez de esta deuda, o cualquier porción de la misma, asumiremos que esta deuda es válida. Si usted nos notifica por escrito dentro de los 30 días después de recibir este aviso que cuestiona la validez de esta deuda, o cualquier porción de la misma, obtendremos la verificación de la deuda u obtendremos la copia de la sentencia y le enviaremos la copia de dicha sentencia o verificación. Si nos lo pide por escrito, dentro de los 30 días después de recibir este aviso, le facilitaremos el nombre y la dirección del acreedor original, si no coincide con el acreedor actual.

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

Si esta deuda no fue liberada en una quiebra sin una reafirmación válida, entienda que Resurgent no busca cobrar la deuda de usted personalmente, sino que busca proteger los derechos del acreedor en la garantía asociada. Haga caso omiso de las disposiciones contradictorias que se encuentran en esta carta e interprete esta comunicación en consecuencia.

P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED



**RESURGENT**
*Mortgage Servicing*
*A Division of Resurgent Capital Services L.P.*

Mon - Thurs: 8:00AM-10:00PM
Fri: 8:00AM-10:00PM
Sat: 8:00AM-3:00PM

**Phone Number:** 866-316-4706
**Fax:** 866-467-1137
**e-Mail:** loanservicing@resurgent.com



S-SFRECS20  L-10-M A-0520592710 R-17
P2C0BE00204045 I20223
CRISPIN T RIVERA
NORMA RIVERA
4734 RANCHO CAMINO CT
LAS VEGAS NV 89129-3684

| Loan Number: | 0520592710 |
|---|---|

November 19, 2012

RE: 4734 Rancho Camino Court, Las Vegas, NV 89129

Dear Valued Customer:

We are pleased to advise you that effective 11/18/2012 Bank of America, N.A. has placed your account with Resurgent Mortgage Servicing, a division of Resurgent Capital Services L.P. ("Resurgent") for servicing. To ensure a smooth transfer, please review the following information.

On and after 11/18/2012, your loan payments should be made payable to Resurgent. Your previous servicer will cease to accept any payments it receives after 11/18/2012 and will forward them to Resurgent. If you have any questions of your previous servicer, you may call their Customer Service Department.

Please feel free to call Resurgent if you have any questions concerning your loan or need additional information. You may contact  Resurgent at 866-316-4706. Our Customer Service hours are from 8:00am to 6:00pm Eastern Time.

As of the date of this letter, the Principal balance is $619,328.56. Should you desire to pay off the account in full, you should contact us at 866-316-4706 to determine the payoff balance as interest, payments, credits, fees and/or other permissible charges can continue to cause your account balance to vary from day to day.

Payments should be mailed to:

Resurgent Mortgage Servicing
P.O. Box 19006
Greenville, SC 29602-9006

Correspondence should be mailed to:

Resurgent Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603-0826

The assignment, sale, or transfer of the servicing of your loan does not affect any term of the loan instruments other than terms directly related to the servicing of your loan.

You should also be aware of the following information, which is set forth in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA)(12 U.S.C.2605):

During the 60 day period following the effective date of the transfer of the loan servicing, a loan payment received by your previous servicer before its due date may not be treated by Resurgent as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C.2605) gives you certain rights. If you send a qualified written request to your loan servicer concerning the servicing of your loan, your servicer must provide you with written acknowledgement within 5 business days of receipt of your request. A qualified written request is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request.

If you want to send a qualified written request regarding the servicing of your loan, it must be sent to P.O. Box 208 Greenville, SC 29602-0208.

No later than 60 business days after receiving your request, your servicer must make any appropriate adjustments to your account and must provide you with written clarification regarding any dispute.  During this 60 business day period, your servicer may not provide information to a consumer rating agency concerning any overdue payment related to such period or qualified written request.  However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for conducting substantially all of its business functions.

Resurgent will not continue to collect, deduct for, or remit any amounts that your previous servicer was collecting for optional credit health, or life insurance. If you desire to maintain these coverages you will need to contact your local insurance agent to establish there types of optional insurance services.

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

0318401036040O

Also, ACH (automatic payment drafting from your checking or savings account) information did not transfer to us from your prior servicer. If you wish to establish automatic payment drafting with Resurgent, please complete and return the enclosed ACH form via one of the methods below or call our office at 866-316-4706.

> Email: loanservicing@resurgent.com
> Fax: 866-467-1137
> Mail to: Resurgent Mortgage Servicing
> Attn: Loan Servicing Department
> 15 S. Main St Suite 400
> Greenville, SC 29601

We value you as a customer and intend to provide you with quality service at all times. We welcome you to the Resurgent family and look forward to a long, pleasant association.

We may report information about your account to the credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-316-4706.

Sincerely,

Resurgent Mortgage Servicing
866-316-4706

**Please read the following important notices as they may affect your rights.**

Unless you notify us within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, we will assume this debt is valid. If you notify us in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of us in writing, within 30 days after receiving this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If this debt was discharged in a bankruptcy without a valid reaffirmation, please understand that Resurgent is not attempting to collect the debt from you personally, but is rather seeking to protect the creditor's right in the associated collateral. Please disregard any contrary provisions contained in this letter and interpret this communication accordingly.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

A menos que usted nos notifique dentro de los 30 días después de recibir este aviso que cuestiona la validez de esta deuda, o cualquier porción de la misma, asumiremos que esta deuda es válida. Si usted nos notifica por escrito dentro de los 30 días después de recibir este aviso que cuestiona la validez de esta deuda, o cualquier porción de la misma, obtendremos la verificación de la deuda u obtendremos la copia de la sentencia y le enviaremos la copia de dicha sentencia o verificación. Si nos lo pide por escrito, dentro de los 30 días después de recibir este aviso, le facilitaremos el nombre y la dirección del acreedor original, si no coincide con el acreedor actual.

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

Si esta deuda no fue liberada en una quiebra sin una reafirmación válida, entienda que Resurgent no busca cobrar la deuda de usted personalmente, sino que busca proteger los derechos del acreedor en la garantía asociada. Haga caso omiso de las disposiciones contradictorias que se encuentran en esta carta e interprete esta comunicación en consecuencia.

## PRIVACY NOTICE

This Privacy Notice is being given on behalf of each of the following related companies (the "Sherman Companies"). It describes the general policy of the Sherman Companies regarding the personal information of customers and former customers. 

| | | |
|---|---|---|
| Anson Street LLC | Granite Asset Management LLC | SFG REO, LLC |
| Ascent Card Services II LLC | Limestone Asset Management LLC | Sherman Acquisition II Limited Partnership |
| Ascent Card Services, LLC | LVNV Funding, LLC | Sherman Acquisition L.L.C. |
| Ashley Funding Services LLC | PYOD LLC | Sherman Acquisition Limited Partnership |
| Credit One Bank, N.A. | Resurgent Capital Services L.P. | Sherman Acquisition TA LP |
| Credit One Financial Solutions LLC | Resurgent Capital Services PR LLC | Tradd Street LLC |
| Fieldstone Asset Management LLC | | |

**Information We May Collect.**  The Sherman Companies may collect the following personal information: (1) information that we receive from your account file at the time we purchase or begin to service your account, such as your name, address, social security number, and assets; (2) information that you may give us through discussion with you, or that we may obtain through your transactions with us, such as your income and payment history;  (3) information that we receive from consumer reporting agencies, such as your creditworthiness and credit history, and (4) information that we obtain from other third party information providers, such as public records and databases that contain publicly available data about you, such as bankruptcy and mortgage filings.  All of the personal information that we collect is referred to in this notice as "collected information".

**Confidentiality and Security of Collected Information.**  At the Sherman Companies, we restrict access to collected information about you to individuals who need to know such collected information in order to perform services in connection with your account.  We maintain physical safeguards (like restricted access), electronic safeguards (like encryption and password protection), and procedural safeguards (such as authentication procedures) to protect collected information about you.

### Sharing Collected Information with Affiliates and Third Parties

**Sharing with Affiliates.**  From time to time, the Sherman Companies may share collected information about customers and former customers with each other and with their affiliated financial services companies in connection with administering and collecting accounts.

**Sharing with Third Parties.**  The Sherman Companies do not share collected information about customers or former customers with third parties, except as permitted by applicable privacy law.  For example, collected information may be shared in certain circumstances (A) with third parties, to service or enforce accounts, (B) with credit reporting agencies, and (C) with law enforcement officials, to protect against fraud or other crimes.

### Special Notice Regarding Collected Information Subject to the Fair Debt Collection Practices Act.
This Privacy Notice is being sent to you by the Sherman Companies in accordance with federal privacy law, and it describes our privacy practices generally.  However, please be assured that collected information that is received or used for purposes of collecting a debt subject to the Fair Debt Collection Practices Act is communicated only in accordance  with that Act.



P.O. BOX 1660
TROY, MI 48099-1410
RETURN SERVICE REQUESTED

S-SFRECE20 E-10-MA-20C 00027 PM-CI
P2-00BE00004046 002226
CRISPIN T RIVERA
NORMA RIVERA
4734 RANCHO CAMINO CT
LAS VEGAS NV 89120-3664

# RESURGENT
## Mortgage Servicing
*A Division of Resurgent Capital Services L.P.*

Mon - Thurs: 8:00AM-10:00PM
Fri: 8:00AM-10:00PM
Sat: 8:00AM-3:00PM

**Phone Number: 866-316-4706**
**Fax: 866-467-1137**
**e-Mail: loanservicing@resurgent.com**



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\* **ACH Draft Authorization** \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Account Number: | 130408282 |
| Loan Number: | 0520592710 |
| Previous Creditor: | Bank of America, N.A. |
| Current Creditor: | Bank of America, N.A. |
| Due Date: | 3/1/2010 |
| Principal Balance: | $619,328.56 |

November 19, 2012

Dear Crispin T Rivera and Norma Rivera:

Resurgent Mortgage Servicing, a division of Resurgent Capital Services L.P. ("Resurgent") is pleased to offer an automatic payment option. Your monthly payments can now be automatically drafted from your checking or savings account each month\*. Resurgent will not charge you for this service. Your monthly payments will be automatically drafted on the date you choose. Proof of payment will appear on your bank statement.

The authority you give to charge the payment to your checking account will remain in effect until you notify us in writing to terminate the authorization.

To take advantage of this service, complete the form below, attach your voided check and return it to our office using the above contact information.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-316-4706.

Sincerely,
Resurgent Mortgage Servicing
866-316-4706

\* Your Monthly Payment Amount may vary due to Interest Rate and/or Escrow changes, if applicable. You will be notified of any change in monthly escrow payments.

#### Please read the following important notices as they may affect your rights.

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If this debt was discharged in a bankruptcy without a valid reaffirmation, please understand that Resurgent is not attempting to collect the debt from you personally, but is rather seeking to protect the creditor's right in the associated collateral. Please disregard any contrary provisions contained in this letter and interpret this communication accordingly.

The following is a Spanish translation of the information previously provided:

#### Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

Si esta deuda no fue liberada en una quiebra sin una reafirmación válida, entienda que Resurgent no busca cobrar la deuda de usted personalmente, sino que busca proteger los derechos del acreedor en la garantía asociada. Haga caso omiso de las disposiciones contradictorias que se encuentran en esta carta e interprete esta comunicación en consecuencia.

031840303A0000

**AUTOMATIC PAYMENT ENROLLMENT FORM**

**Borrower/Payment Information** (please update any incorrect information listed below)

Loan Number: **0520592710**

Borrower 1: **Crispin T Rivera**                          Borrower 2: **Norma Rivera**

Mailing Address: **4734 Rancho Camino Ct  Las Vegas NV 89129**

Date to Start Drafting Payment: _____/_____/_____

Day of the month that the monthly draft should occur (must be between the 1st and 28th): _____

    *Current Monthly Payment Amount: $2,611.57
     **Additional Draft Amount: + _____
     Total Monthly Draft Amount:

\* Your Monthly Payment Amount may vary due to Interest Rate and/or Escrow changes, if applicable. You will be notified of any change in monthly escrow payments.

\*\* Funds drafted in excess of my regular payment amount will first be used to satisfy amounts that are past due.  If no amounts are past due, then excess funds will be posted to reduce my principal balance.

**Banking Information**

ABA Transit Number: _____     Bank Account Number: _____

Please indicate account type: ☐ CHECKING or ☐ SAVINGS    Bank Name: _____

**Authorization to Begin Automated Payment Option**

I authorize Resurgent to debit my account each month.  I understand that if the drafting day should fall on a non-business day, the draft will take place on the next business day.  In order to cancel the draft, I must make a request in writing to Resurgent 20 days in advance of the scheduled drafting date.  Insufficient funds ("NSF") charges will apply to my account if the funds are not available at the time of debit.

If my regularly scheduled draft is returned, a second draft may be attempted.  In the event three of my scheduled drafts are returned, the Automated Payment Option will be terminated.  Each NSF transaction will result in an NSF fee.

I acknowledge that I have read, understand, and agree to the terms set forth for the Automated Payment Option.

Signature: _____     Signature: _____
  **Crispin T Rivera**         **Norma Rivera**

(Both signatures required if Joint account.)

RETAIN A COPY OF THIS FORM FOR YOUR RECORDS.

       ☐  Attach a voided check to this form.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Loanhist.rpt
06/30/2015 2:33:57PM

**Shellpoint Mortgage Servicing**
**Loan History Summary**

Page #1

**Loan ID:** 0620592710
**Borrower Name:** Crispin T Rivera

| Trans Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/26/15 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 06/17/15 | 03/01/10 | Appraisal Assess | 0 | 0 | (350.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 06/05/15 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 05/13/15 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 05/27/15 | 03/31/15 | Fire Disb | 0 | 0 | (1,635.00) | | 619,328.56 | | ($1,635.00) | ($16,467.84) | | 329.01 | None |
| | | Payee: AMERICAN NATIONAL PROPERTY CASUALTY  Batch ID: 25726 | | | | | | | | | | | |
| 04/25/15 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 04/03/15 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 04/11/15 | 03/03/15 | County Tax Bill 4 | 0 | 0 | (678.67) | | 619,328.56 | | ($678.67) | ($14,832.84) | | 329.01 | None |
| | | Payee: CLARK COUNTY  Batch ID: 20347 | | | | | | | | | | | |
| 03/15/15 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 12/31/14 | 12/31/14 | Certified Mail Fee Assess | 0 | 0 | (3.22) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 12/17/14 | 12/17/14 | County Tax Bill 3 | 0 | 0 | (678.67) | | 619,328.56 | | ($678.67) | ($14,154.17) | | 329.01 | None |
| | | Payee: CLARK COUNTY  Batch ID: 15437 | | | | | | | | | | | |
| 03/17/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 03/17/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 03/17/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 03/17/14 | 03/01/10 | BPO / Appraisal Fee Assess | 0 | 0 | (95.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 09/10/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 09/15/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 10/07/14 | 10/07/14 | County Tax Bill 2 | 0 | 0 | (678.67) | | 619,328.56 | | ($678.67) | ($13,475.50) | | 329.01 | None |
| | | Payee: CLARK COUNTY  Batch ID: 6087 | | | | | | | | | | | |
| 08/15/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 08/15/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 08/15/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 08/15/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 08/04/14 | 03/01/10 | Foreclosure Trustee Assess | 0 | 0 | (195.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 07/28/14 | 03/01/10 | BPO / Appraisal Fee Assess | 0 | 0 | (95.00) | | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |

Loanhist.rpt
06/30/2015  2:33:57PM

**Shellpoint Mortgage Servicing**
**Loan History Summary**

Page #2

**Loan ID** 0520592710
**Borrower Name** Crispin T Rivera

| Trans Eff Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/22/14 | 08/19/14 | County Tax Bill 1 | 0 | 0 | (680.55) | 619,328.56 | | ($680.55) | ($12,796.83) | | 329.01 | None |
| Payee: CLARK COUNTY   Batch ID: 1396 | | | | | | | | | | | | |
| 02/11/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 03/03/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 03/22/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 06/22/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 07/13/14 | 03/31/14 | Hazard Disb | 0 | 0 | (1,169.00) | 619,328.56 | | ($1,169.00) | ($12,116.28) | | 329.01 | None |
| Payee: AMERICAN NATIONAL PROPERTY CASUALTY   Batch ID: 23786 | | | | | | | | | | | | |
| 03/06/14 | 03/01/10 | Occ Prop Insp Pmt | 0 | 0 | 3.00 | 619,328.56 | | $0.00 | ($10,947.28) | | 329.01 | Personal Check |
| 06/06/14 | 03/01/10 | Occ Prop Insp Pmt | 0 | 0 | 3.00 | 619,328.56 | | $0.00 | ($10,947.28) | | 329.01 | Personal Check |
| 06/06/14 | 03/01/10 | Occ Prop Insp Pmt | 0 | 0 | 3.00 | 619,328.56 | | $0.00 | ($10,947.28) | | 329.01 | Personal Check |
| 06/05/14 | 03/01/10 | Occ Prop Insp Waive | 0 | 0 | 400.00 | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 06/05/14 | 03/01/10 | Occ Prop Insp Waive | 0 | 0 | (200.00) | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 06/05/14 | 03/01/10 | Property Inspection Assess | 0 | 0 | (200.00) | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 06/04/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 06/04/14 | 03/01/10 | Occ Prop Insp Waive | 0 | 0 | (200.00) | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 03/04/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 06/25/14 | 03/03/14 | County Tax Bill 4 | 0 | 0 | (658.90) | 619,328.56 | | ($658.90) | ($10,947.28) | | 329.01 | None |
| Payee: CLARK COUNTY   Batch ID: 21266 | | | | | | | | | | | | |
| 06/04/14 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 12/17/13 | 12/31/13 | County Tax Bill 3 | 0 | 0 | (658.90) | 619,328.56 | | ($658.90) | ($10,288.38) | | 329.01 | None |
| Payee: CLARK COUNTY   Batch ID: 16971 | | | | | | | | | | | | |
| 12/20/13 | 03/01/10 | Property Pres Assess | 0 | 0 | (10.00) | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 12/05/13 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (15.00) | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |
| 11/06/13 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (18.00) | 619,328.56 | | $0.00 | $0.00 | | 329.01 | None |

Loanhist.rpt
06/30/2015 2:33:57PM

Shellpoint Mortgage Servicing
Loan History Summary

Page #3

**Loan ID** 0520592710  **Borrower Name** Crispin T Rivera

| Trans Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Balance | Interest Amount | Escrow Amount | Balance | Late Charge Amount | Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/03/13 | 03/01/13 | Occ Prop Insp Assess | 0 | 0 | (18.00) | | 619,328.56 | | $0.00 | $0.00 | 329.01 | None |
| 10/16/13 | 10/01/13 | Tax Bill 2 Disbursement Bill 2 | 0 | 0 | (658.90) | | 619,328.56 | | ($658.90) | ($9,629.48) | 329.01 | None |

Payee: CLARK COUNTY Batch ID: 11046

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/03/13 | 03/01/13 | Occ Prop Insp Assess | 0 | 0 | (18.00) | | 619,328.56 | | $0.00 | $0.00 | 329.01 | None |
| 09/12/13 | 03/01/13 | Occ Prop Insp - OL Assess | 0 | 0 | (15.00) | | 619,328.56 | | $0.00 | $0.00 | 329.01 | None |
| 09/06/13 | 03/01/13 | Property Inspection Assess | 0 | 0 | (18.00) | | 619,328.56 | | $0.00 | $0.00 | 329.01 | None |
| 08/25/13 | 08/20/13 | Tax Bill 1 Disbursement Bill 1 | 0 | 0 | (661.00) | | 619,328.56 | | ($661.00) | ($8,970.58) | 329.01 | None |

Payee: CLARK COUNTY Batch ID: 8046

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/24/13 | 03/01/10 | Property Inspection Assess | 0 | 0 | (18.00) | | 619,328.56 | | $0.00 | $0.00 | 329.01 | None |
| 07/20/13 | 03/01/10 | Property Inspection Assess | 0 | 0 | (18.00) | | 619,328.56 | | $0.00 | $0.00 | 329.01 | None |
| 06/01/13 | 03/01/10 | Property Inspection Assess | 0 | 0 | (18.00) | | 619,328.56 | | $0.00 | $0.00 | 329.01 | None |
| 05/01/13 | 03/01/10 | BPO/ Appraisal Fee Assess | 0 | 0 | (95.00) | | 619,328.56 | | $0.00 | $0.00 | 329.01 | None |
| 04/30/13 | 03/01/10 | Property Pres Assess | 0 | 0 | (13.00) | | 619,328.56 | | $0.00 | $0.00 | 329.01 | None |
| 04/30/13 | 03/01/10 | Property Inspection Assess | 0 | 0 | (18.00) | | 619,328.56 | | $0.00 | $0.00 | 329.01 | None |
| 04/01/13 | 03/01/10 | Property Inspection Assess | 0 | 0 | (18.00) | | 619,328.56 | | $0.00 | $0.00 | 329.01 | None |

Payee: AMERICAN NATIONAL PROPERTY CASUALTY Batch ID: 2030

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/01/13 | 03/01/13 | Hazard Disb | 0 | 0 | (1,138.00) | | 619,328.56 | | ($1,138.00) | ($8,309.58) | 109.67 | None |
| 03/01/13 | 03/31/13 | Late Charge Assess | 0 | 0 | (109.67) | | 619,328.56 | | $0.00 | ($8,309.58) | (109.67) | 219.34 | None |
| 03/16/13 | 03/01/13 | Late Charge Assess | 0 | 0 | (109.67) | | 619,328.56 | | $0.00 | ($8,309.58) | (109.67) | 329.01 | None |
| 04/16/13 | 03/01/10 | Property Inspection Assess | 0 | 0 | (18.00) | | 619,328.56 | | $0.00 | ($8,309.58) | 329.01 | None |
| 03/01/10 | 03/01/10 | Property Inspection Assess | 0 | 0 | (18.00) | | 619,328.56 | | $0.00 | ($8,309.58) | 329.01 | None |
| 03/01/10 | 03/01/10 | Property Inspection Assess | 0 | 0 | (18.00) | | 619,328.56 | | $0.00 | ($8,309.58) | 329.01 | None |
| 02/01/13 | 02/01/13 | Late Charge Assess | 0 | 0 | (109.67) | | 619,328.56 | | $0.00 | ($7,171.58) | (109.67) | 109.67 | None |

Payee: CLARK COUNTY Batch ID: 1069

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/04/13 | 02/07/13 | Tax Bill 4 Disbursement Bill 4 | 0 | 0 | (639.71) | | 619,328.56 | | ($639.71) | ($7,171.58) | 0.00 | None |
| 02/12/13 | 03/01/10 | Property Inspection Assess | 0 | 0 | (20.00) | | 619,328.56 | | $0.00 | $0.00 | 0.00 | None |
| 02/04/13 | 03/01/10 | New Tax Contract Assess | 0 | 0 | (73.00) | | 619,328.56 | | $0.00 | $0.00 | 0.00 | None |

Case 2:15-cv-01332-JAD-GWF Document 1-1 Filed 07/14/15 Page 108 of 116

Shellpoint Mortgage Servicing
Loan History Summary

**Loan ID** 0520592710  **Borrower Name** Crispin T Rivera

| Trans Date Eff Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/25/13 | 10/01/06 | Certified Mail Fee Assess | 0 | 0 | (8.57) | | 619,328.56 | | $0.00 | $1,663.40 | 0.00 | 0.00 | None |
| 05/04/13 | 03/01/10 | Occ Prop Insp Assess | 0 | 0 | (200.00) | | 619,328.56 | | $0.00 | $0.00 | 0.00 | 0.00 | None |
| 03/04/13 | 03/01/10 | Occ Prop Insp - nr Waive | 0 | 0 | 200.00 | | 619,328.56 | | $0.00 | $0.00 | 0.00 | 0.00 | None |
| 03/01/13 | | New Loan | 0 | 0 | 0.00 | 583,204.83 | 583,204.83 | | $0.00 | $0.00 | 0.00 | 0.00 | None |
| 01/07/13 | 01/03/13 | Tax Bill 3 Disbursement Bill 3 | 0 | 0 | (639.71) | | 619,328.56 | | ($639.71) | ($6,531.87) | 0.00 | 0.00 | None |
| | | Payer: CLARK COUNTY Batch ID: 32049 | | | | | | | | | | | |
| 10/28/12 | 10/28/12 | Certified Mail Fee Assess | 0 | 0 | (8.57) | | 583,204.83 | | $0.00 | $1,663.40 | 0.00 | 0.00 | None |
| 03/28/12 | 06/30/12 | Occ Prop Insp - OL Assess | 0 | 0 | (249.00) | | 619,328.56 | | $0.00 | $0.00 | 0.00 | 0.00 | None |
| 11/28/12 | 11/28/12 | Tax Bill 3 Disbursement | 0 | 0 | (200.00) | | 619,328.56 | | $0.00 | $0.00 | 0.00 | 0.00 | None |
| 03/02/12 | 03/02/12 | Insurance Premium Disbursement | 0 | 0 | (972.00) | | 619,328.56 | | ($972.00) | ($4,611.25) | 0.00 | 0.00 | None |
| 01/18/12 | 01/18/12 | Tax Bill 1 Disbursement | 0 | 0 | (641.20) | | 619,328.56 | | ($641.20) | ($5,252.45) | 0.00 | 0.00 | None |
| 02/24/12 | 02/24/12 | Tax Bill 1 Disbursement | 0 | 0 | (639.71) | | 619,328.56 | | ($639.71) | ($5,892.16) | 0.00 | 0.00 | None |
| 03/01/12 | 03/01/10 | Tax Bill 1 Disbursement | 0 | 0 | (200.00) | | 619,328.56 | | $0.00 | $0.00 | 0.00 | 0.00 | None |
| 12/22/12 | 03/01/10 | Tax Bill 1 Disbursement | 0 | 0 | 0.00 | | 619,328.56 | | $0.00 | $0.00 | 0.00 | 0.00 | None |
| 12/15/11 | 03/01/10 | Tax Bill 1 Disbursement | 0 | 0 | (639.71) | | 619,328.56 | | ($639.71) | ($5,892.16) | 0.00 | 0.00 | None |
| 12/21/11 | 02/01/10 | Tax Bill 1 Disbursement | 0 | 0 | (649.57) | | 619,328.56 | | ($649.57) | ($3,639.25) | 0.00 | 0.00 | None |
| 03/28/11 | 02/01/10 | Tax Bill 1 Disbursement | 0 | 0 | (649.57) | | 619,328.56 | | ($649.57) | ($2,989.68) | 0.00 | 0.00 | None |
| 03/01/11 | 02/01/10 | Insurance Premium Disbursement | 0 | 0 | (649.57) | | 619,328.56 | | ($649.57) | ($2,340.11) | 0.00 | 0.00 | None |
| 03/02/11 | 02/01/10 | Unapplied Payment | 0 | 0 | (972.00) | | 619,328.56 | | ($972.00) | ($4,611.25) | 0.00 | 0.00 | None |
| 03/04/11 | 02/01/10 | Unapplied Payment | 0 | 0 | (109.67) | | 619,328.56 | | $0.00 | ($2,027.36) | 0.00 | (109.67) | None |
| 03/12/11 | 02/01/10 | Unapplied Payment | 0 | 0 | 109.67 | | 619,328.56 | | $0.00 | ($2,027.36) | 0.00 | (109.67) | None |
| 03/28/11 | 02/01/10 | Unapplied Payment | 0 | 0 | (987.88) | | 619,328.56 | | $0.00 | ($2,027.36) | 0.00 | 0.00 | None |
| 12/21/11 | 02/01/10 | Tax Bill 1 Disbursement | 0 | 0 | (651.06) | | 619,328.56 | | ($651.06) | ($1,039.48) | 0.00 | (109.67) | None |
| 12/21/10 | 02/01/10 | Tax Bill 1 Disbursement | 0 | 0 | (649.57) | | 619,328.56 | | ($649.57) | ($1,690.54) | 0.00 | (109.67) | None |
| 09/30/10 | 02/01/10 | Tax Bill 1 Disbursement | 0 | 0 | (657.68) | | 619,328.56 | | ($657.68) | ($1,315.36) | 0.00 | (109.67) | None |
| 09/30/10 | 02/01/10 | Unapplied Payment | 0 | 0 | 0.00 | | 619,328.56 | | $1,426.48 | $0.00 | 0.00 | (109.67) | None |
| 09/28/10 | 02/01/10 | Tax Bill 1 Disbursement | 0 | 0 | (657.68) | | 619,328.56 | | ($657.68) | ($1,426.48) | 0.00 | (109.67) | None |

Loanhist.rpt
06/30/2015 2:33:57PM

**Shellpoint Mortgage Servicing**
**Loan History Summary**

Page #5

**Loan ID** 0620592710
**Borrower Name** Crispin T Rivera

| Trans Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/10/10 | 02/01/10 | Tax Bill 1 Disbursement | 0 | 0 | (657.67) | | 619,328.56 | | ($657.67) | ($768.80) | (109.67) | (109.67) | None |
| 04/29/10 | 02/01/10 | Regular Payment | 0 | 0 | 2,611.57 | | 619,328.56 | 2,193.46 | $418.11 | ($111.13) | | (109.67) | None |
| 04/29/10 | 02/01/10 | Unapplied Payment | 0 | 0 | (2,611.57) | | 619,328.56 | | $0.00 | ($529.24) | 0.00 | 0.00 | None |
| 01/11/10 | 01/01/10 | Unapplied Payment | 0 | 0 | 2,567.80 | | 619,328.56 | | $0.00 | ($529.24) | 0.00 | 0.00 | None |
| 01/11/10 | 01/01/10 | Insurance Premium Disbursement | 0 | 0 | (732.00) | | 619,328.56 | | ($732.00) | $0.00 | 0.00 | 0.00 | None |
| 12/23/10 | 01/01/10 | Tax Bill 1 Disbursement | 0 | 0 | (884.37) | | 619,328.56 | | ($884.37) | ($529.24) | 0.00 | 0.00 | None |
| 12/24/10 | 01/01/10 | Regular Payment | 0 | 0 | 2,567.80 | | 619,328.56 | 2,193.46 | $374.34 | $202.76 | 0.00 | 0.00 | None |
| 01/05/10 | 01/01/10 | Tax Bill 1 Disbursement | 0 | 0 | (884.37) | | 619,328.56 | | ($884.37) | ($529.24) | 0.00 | 0.00 | None |
| 01/10/10 | 01/01/10 | Regular Payment | 0 | 0 | 2,567.80 | | 619,328.56 | 2,193.46 | $374.34 | $745.78 | 0.00 | 0.00 | None |
| 01/10/10 | 01/01/10 | Tax Bill 1 Disbursement | 0 | 0 | (884.37) | | 619,328.56 | | ($884.37) | $202.76 | 0.00 | 0.00 | None |
| 01/23/10 | 01/01/10 | Regular Payment | 0 | 0 | 2,567.80 | | 619,328.56 | 2,193.46 | $374.34 | $1,087.13 | 0.00 | 0.00 | None |
| 01/10/10 | 01/01/10 | Regular Payment | 0 | 0 | 2,567.80 | | 619,328.56 | 2,193.46 | $374.34 | $1,087.13 | 0.00 | 0.00 | None |
| 09/30/09 | 01/01/10 | Regular Payment | 0 | 0 | 2,567.80 | | 619,328.56 | 2,193.46 | $374.34 | $712.79 | 0.00 | 0.00 | None |
| 09/30/09 | 01/01/10 | Tax Bill 1 Disbursement | 0 | 0 | (884.35) | | 619,328.56 | | ($884.35) | $1,597.16 | 0.00 | 0.00 | None |
| 09/03/09 | 09/01/09 | Regular Payment | 0 | 0 | 2,567.80 | | 619,328.56 | 2,193.46 | $374.34 | $1,222.82 | 0.00 | 0.00 | None |
| 08/11/09 | 09/01/09 | Regular Payment | 0 | 0 | 2,567.80 | | 619,328.56 | 2,193.46 | $374.34 | $848.48 | 0.00 | 0.00 | None |
| 08/04/09 | 08/01/09 | Regular Payment | 0 | 0 | 2,567.80 | | 619,328.56 | 2,193.46 | $374.34 | $474.14 | 0.00 | 0.00 | None |
| 07/03/09 | 07/01/09 | Regular Payment | 0 | 0 | 2,567.80 | | 619,451.91 | 2,193.74 | $374.06 | $1,358.51 | 0.00 | 0.00 | None |
| 06/04/09 | 06/01/09 | Regular Payment | 0 | 0 | 2,567.80 | | 619,451.91 | 2,193.74 | $374.06 | $984.17 | 0.00 | 0.00 | None |
| 05/05/09 | 05/01/09 | Unapplied Payment | 0 | 0 | 123.35 | 123.35 | 619,451.91 | | $0.00 | $1,868.52 | 0.00 | 0.00 | None |
| 05/21/09 | 05/01/09 | Regular Payment | 0 | 0 | 2,567.80 | | 619,328.56 | 2,193.89 | $373.91 | $1,494.18 | 0.00 | 0.00 | None |
| 04/06/09 | 04/01/09 | Principal Adjustment | 0 | 0 | (5,371.30) | (5,371.30) | 619,451.91 | | | $1,119.84 | 0.00 | 0.00 | None |
| 03/06/09 | 03/01/09 | Regular Payment | 0 | 0 | 2,567.80 | | 614,080.61 | 2,193.89 | $373.91 | $745.78 | 0.00 | 0.00 | None |
| 03/03/09 | 01/01/09 | Insurance Premium Disbursement | 0 | 0 | (578.00) | | 614,080.61 | | ($578.00) | $371.87 | 0.00 | 0.00 | None |
| 03/02/09 | 01/01/09 | Insurance Refund | 0 | 0 | 9.00 | | 614,080.61 | | $9.00 | $575.96 | 0.00 | 0.00 | None |

Loanhist.rpt
06/30/2015 2:33:57PM

**Shellpoint Mortgage Servicing**
**Loan History Summary**

Page #6

**Loan ID** 0520592710    **Borrower Name** Crispin T Rivera

Payee: Crispin T Rivera  Batch ID: 0

| Trans Date / Eff Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/25/09 | 01/01/09 | Tax Bill I Disbursement | 0 | 0 | (979.23) | | 614,080.61 | | ($979.23) | $566.96 | | 0.00 | None |
| 01/05/09 | 01/01/09 | Regular Payment | 0 | 0 | 3,188.45 | | 614,080.61 | 2,814.54 | $373.91 | $1,546.19 | | 0.00 | None |
| 12/22/08 | 12/01/08 | Tax Bill I Disbursement | 0 | 0 | (979.23) | | 614,080.61 | | ($979.23) | $1,172.28 | | 0.00 | None |
| 12/11/08 | 12/01/08 | Escrow Disbursement | 0 | 0 | (698.58) | | 614,080.61 | | ($698.58) | $2,151.51 | | 0.00 | None |
| 12/05/08 | 12/01/08 | Unapplied Payment | 0 | 0 | 17.54 | 17.54 | 614,080.61 | | $0.00 | $2,850.09 | | 0.00 | None |
| 12/07/08 | 12/01/08 | Regular Payment | 0 | 0 | 2,417.64 | | 614,098.15 | 2,874.69 | $373.91 | $2,850.09 | | 0.00 | None |
| 11/06/08 | 11/01/08 | Unapplied Payment | 0 | 0 | 0.00 | 140.26 | 613,267.19 | | $0.00 | $2,476.18 | | 0.00 | None |
| 11/05/08 | 11/01/08 | Regular Payment | 0 | 0 | 140.26 | 140.26 | 613,407.45 | | $0.00 | $2,476.18 | | 0.00 | None |
| 11/05/08 | 11/01/08 | Unapplied Payment | 0 | 0 | 2,292.59 | (954.74) | 613,407.45 | (2,998.47) | ($248.86) | $2,227.32 | (95.06) | (95.06) | None |
| 10/05/08 | 10/01/08 | Regular Payment | 0 | 0 | (2,292.59) | (1,013.47) | 613,407.45 | (3,057.20) | ($248.86) | $1,978.46 | | (95.06) | None |
| 09/05/08 | 09/01/08 | Regular Payment | 0 | 0 | (2,292.59) | (1,276.79) | 612,452.71 | (3,177.93) | ($248.86) | $2,476.18 | 95.06 | (95.06) | None |
| 08/05/08 | 08/01/08 | Regular Payment | 0 | 0 | (2,292.59) | 954.74 | 611,439.24 | 3,057.20 | $248.86 | $2,227.32 | | (95.06) | None |
| 11/05/08 | 11/01/08 | Regular Payment | 0 | 0 | 2,292.59 | 1,276.79 | 610,162.45 | 3,177.93 | $391.45 | $2,476.18 | | (95.06) | None |
| 09/05/08 | 09/01/08 | Regular Payment | 0 | 0 | 2,292.59 | 1,013.47 | 612,452.71 | 2,998.47 | $248.86 | $1,978.46 | | $391.45 | None |
| 10/05/08 | 10/01/08 | Regular Payment | 0 | 0 | 2,292.59 | (954.74) | 611,439.24 | | $248.86 | $2,227.32 | | (95.06) | None |
| 11/05/08 | 11/01/08 | Regular Payment | 0 | 0 | 2,292.59 | (1,276.79) | 612,452.71 | | $0.00 | $2,476.18 | | 0.00 | None |
| 09/05/08 | 09/01/08 | Unapplied Payment | 0 | 0 | 140.26 | (1,013.47) | 613,407.45 | | $0.00 | $1,978.46 | | 0.00 | None |
| 10/05/08 | 10/01/08 | Regular Payment | 0 | 0 | 2,292.59 | (954.74) | 611,439.24 | | $248.86 | $2,227.32 | | 0.00 | None |
| 09/05/08 | 09/01/08 | Regular Payment | 0 | 0 | (2,292.59) | 954.74 | 612,452.71 | 3,057.20 | ($248.86) | $1,587.01 | | 0.00 | None |
| 09/30/08 | 09/30/08 | Tax Bill I Disbursement | 0 | 0 | (979.23) | | 610,162.45 | | ($979.23) | $1,587.01 | | 0.00 | None |
| 09/09/08 | 09/09/08 | Unapplied Payment | 0 | 0 | 3,448.65 | | 610,162.45 | | $0.00 | $1,587.01 | | 0.00 | None |
| 08/01/08 | 08/01/08 | Unapplied Payment | 0 | 0 | 3,569.38 | | 610,162.45 | | $0.00 | $2,566.24 | | 0.00 | None |
| 08/11/08 | 08/01/08 | Tax Bill I Disbursement | 0 | 0 | (979.24) | | 610,162.45 | | ($979.24) | $2,566.24 | | 0.00 | None |

Case 2:15-cv-01332-JAD-GWF Document 1 Filed 07/14/15 Page 111 of 116

**Shellpoint Mortgage Servicing**
**Loan History Summary**

**Loan ID** 0520592710  **Borrower Name** Crispin T Rivera

| Loan Date / Eff Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/04/08 | 08/01/08 | Regular Payment | 0 | 0 | 3,696.50 | | 610,162.45 | 3,305.05 | $391.45 | $3,545.48 | 0.00 | 0.00 | None |
| 08/07/08 | 07/01/08 | Regular Payment | 0 | 0 | 3,823.61 | | 610,162.45 | 3,432.16 | $391.45 | $3,154.03 | 0.00 | 0.00 | None |
| 05/29/08 | 06/01/08 | Regular Payment | 0 | 0 | 3,950.73 | | 610,162.45 | 3,559.28 | $391.45 | $2,762.58 | 0.00 | 0.00 | None |
| 04/30/08 | 05/01/08 | Regular Payment | 0 | 0 | 4,077.85 | | 610,162.45 | 3,686.40 | $391.45 | $2,371.13 | 0.00 | 0.00 | None |
| 03/28/08 | 04/01/08 | Regular Payment | 0 | 0 | 4,204.97 | | 610,162.45 | 3,813.52 | $391.45 | $1,979.68 | 0.00 | 0.00 | None |
| 03/03/08 | 03/01/08 | Insurance Premium Disbursement | 0 | 0 | (627.00) | | 610,162.45 | | ($627.00) | $1,588.23 | 0.00 | 0.00 | None |
| 03/29/08 | 03/01/08 | Regular Payment | 0 | 0 | 4,332.08 | | 610,162.45 | 3,940.63 | $391.45 | $2,215.23 | 0.00 | 0.00 | None |
| 02/27/08 | 02/01/08 | Tax Bill 1 Disbursement | 0 | 0 | (950.71) | | 610,162.45 | | ($950.71) | $1,823.78 | 0.00 | 0.00 | None |
| 02/31/08 | 02/01/08 | Unapplied Payment | 0 | 0 | 707.41 | | 610,162.45 | | $707.41 | $2,774.49 | 0.00 | 0.00 | None |
| 02/31/08 | 02/01/08 | Tax Bill 1 Disbursement | 0 | 0 | (950.71) | | 610,162.45 | | ($950.71) | $2,067.08 | 0.00 | 0.00 | None |
| 02/28/08 | 02/01/08 | Regular Payment | 0 | 0 | 2,292.59 | (2,089.34) | 610,162.45 | 3,990.48 | $391.45 | $1,675.63 | 0.00 | 0.00 | None |
| 01/31/08 | 01/01/08 | Regular Payment | 0 | 0 | 4,445.27 | | 610,162.45 | 4,053.82 | $391.45 | $1,284.18 | 0.00 | 0.00 | None |
| 12/26/07 | 12/01/07 | Tax Bill 1 Disbursement | 0 | 0 | (950.71) | | 608,073.11 | | ($950.71) | $2,234.89 | 0.00 | 0.00 | None |
| 12/28/07 | 12/01/07 | Regular Payment | 0 | 0 | 2,292.59 | (2,201.12) | 608,073.11 | 4,102.26 | $391.45 | $1,843.44 | 0.00 | 0.00 | None |
| 12/28/07 | 11/01/07 | Regular Payment | 0 | 0 | 4,477.05 | | 608,073.11 | 4,102.26 | $374.79 | $1,468.65 | 0.00 | 0.00 | None |
| 11/01/07 | 11/01/07 | Regular Payment | 0 | 0 | 2,292.59 | (2,193.04) | 606,871.99 | 4,094.18 | $391.45 | $1,468.65 | 0.00 | 0.00 | None |
| 10/31/07 | 10/01/07 | Unapplied Payment | 0 | 0 | 1,000.00 | | 605,871.99 | | $374.79 | $1,093.86 | 0.00 | 0.00 | None |
| 10/28/07 | 10/01/07 | Unapplied Payment | 0 | 0 | 1,000.00 | 1,000.00 | 605,871.99 | | $0.00 | $2,044.57 | 0.00 | 0.00 | None |
| 09/30/07 | 10/01/07 | Regular Payment | 0 | 0 | 2,275.93 | | 604,678.95 | 4,147.69 | $383.96 | $2,044.57 | 0.00 | 0.00 | None |
| 09/30/07 | 09/01/07 | Tax Bill 1 Disbursement | 0 | 0 | (950.71) | | 604,678.95 | | ($950.71) | $1,093.86 | 0.00 | 0.00 | None |
| 09/01/07 | 09/01/07 | Unapplied Payment | 0 | 0 | 1,000.00 | 1,000.00 | 605,678.95 | | $0.00 | $1,468.65 | 0.00 | 0.00 | None |
| 08/24/07 | 09/01/07 | Regular Payment | 0 | 0 | 2,152.46 | (2,379.19) | 603,299.76 | 4,147.69 | $383.96 | $2,044.57 | 0.00 | 0.00 | None |
| 08/24/07 | 08/01/07 | Surplus Disbursement | 0 | 0 | (1,082.66) | | 603,299.76 | | ($1,082.66) | $1,660.61 | 0.00 | 0.00 | None |
| 07/31/07 | 08/01/07 | Regular Payment | 0 | 0 | 4,531.65 | | 603,299.76 | 4,147.69 | $383.96 | $3,693.98 | 0.00 | 0.00 | None |
| 06/28/07 | 07/01/07 | Regular Payment | 0 | 0 | 2,152.46 | (2,362.94) | 603,299.76 | 4,131.44 | $383.96 | $3,310.02 | 0.00 | 0.00 | None |

Payee: Crispin T Rivera Batch ID: 0

Case 2:15-cv-01332-JAD-GWF   Document 1   Filed 07/14/15   Page 112 of 116

**Shellpoint Mortgage Servicing**
**Loan History Summary**

**Loan ID** 0520592710  **Borrower Name** Crispin T Rivera

| Trans Date/Eff Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/30/07 | 06/01/07 | Regular Payment | 0 | 0 | 2,152.46 | (2,346.81) | 600,936.82 | 4,115.31 | $383.96 | $2,926.06 | 0.00 | None |
| 05/27/07 | 05/01/07 | Regular Payment | 0 | 0 | 2,152.46 | (2,330.78) | 598,590.01 | 4,099.28 | $383.96 | $2,542.10 | 0.00 | None |
| 03/28/07 | 04/01/07 | Regular Payment | 0 | 0 | 2,152.46 | (2,253.41) | 596,259.23 | 4,021.91 | $383.96 | $2,158.14 | 0.00 | None |
| 03/06/07 | 03/01/07 | Insurance Premium Disbursement | 0 | 0 | (886.00) | | 594,005.82 | | ($886.00) | $1,774.18 | 0.00 | None |
| 03/28/07 | 03/01/07 | Tax Bill 1 Disbursement | 0 | 0 | (923.02) | | 594,005.82 | | ($923.02) | $2,660.18 | 0.00 | None |
| 03/28/07 | 03/01/07 | Regular Payment | 0 | 0 | 2,152.46 | (2,238.26) | 594,005.82 | 4,006.76 | $383.96 | $3,583.20 | 0.00 | None |
| 02/28/07 | 02/01/07 | Regular Payment | 0 | 0 | 2,152.46 | (2,223.21) | 591,767.56 | 3,991.71 | $383.96 | $3,199.24 | 0.00 | None |
| 01/28/07 | 01/01/07 | Regular Payment | 0 | 0 | 2,152.46 | (2,147.48) | 589,544.35 | 3,915.98 | $383.96 | $2,815.28 | 0.00 | None |
| 12/28/06 | 12/01/06 | Regular Payment | 0 | 0 | 2,152.46 | (2,133.26) | 587,396.87 | 3,901.76 | $383.96 | $2,431.32 | 0.00 | None |
| 11/29/06 | 11/01/06 | Regular Payment | 0 | 0 | 2,152.46 | (2,058.78) | 585,263.61 | 3,827.28 | $383.96 | $2,047.36 | 0.00 | None |
| 10/30/06 | 10/01/06 | Regular Payment | 0 | 0 | 2,152.46 | 795.17 | 583,204.83 | 973.33 | $383.96 | $1,663.40 | 0.00 | None |
| | | | | | ($35,328.56) | | | $126,412.21 | | | | | |

# EXHIBIT "D"

## ASSIGNMENT

Inst #: **201106240003385**
Fees: **$15.00**
N/C Fee: **$0.00**
06/24/2011 12:35:08 PM
Receipt #: 823715
Requestor:
**CORELOGIC**
Recorded By: ARO   Pgs: 2
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

Recording Requested By:
**Bank of America**
Prepared By: **Youda Crain**
**888-603-9011**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**



DocID#    **83213040828215980**
Tax ID:    **138-05-110-019**
Property Address:
**4734 Rancho Camino Court**
**Las Vegas, NV 89129-3684**
NV0-ADT 14089134    6/14/2011

This space for Recorder's use

MIN #: 1001340-0110014009-9          MERS Phone #: 888-679-6377

# ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST   2006-OA14, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA14** whose address is **101 BARCLAY ST - 4W, NEW YORK ,NY 10286** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:    **GATEWAY BANK, FSB.**
Made By:    **CRISPIN T. RIVERA AND NORMA C. RIVERA, HUSBAND AND WIFE AS JOINT TENANTS**
Trustee:    **NORTH AMERICAN TITLE**
Date of Deed of Trust: 8/2/2006        Original Loan Amount: **$584,000.00**

Recorded in Clark County, NV on: 8/11/2006, book N/A, page N/A and instrument number 20060811-0000570

I the undersigned hereby affirm that this document submitted for recording does not contain the social security number of any person or persons.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**6/22/11**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: _____
**Christopher Herrera, Assistant Secretary**

State of California
County of Ventura

On **6-22-2011** before me, **Norma Rojas**, Notary Public, personally appeared Christopher Herrera, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: Norma Rojas                    (Seal)
My Commission Expires: 2/14/2015

NORMA ROJAS
Commission # 1925682
Notary Public - California
Ventura County
My Comm. Expires Feb 14, 2015

Attached: Assignment of Deed of Trust
borrower(s): Crispin T. Rivera
Norma C. Rivera

1
2
3

# CERTIFICATE OF SERVICE

4
5

I certify that a copy of Summons and Complaint will be serve upon Defendant

6

listed below in compliance with FRCP Rule 4;

7
8
9

NEW PENN FINANCIAL, LLC

10

(dba) SHELLPOINT MORTGAGE SERVICING
c/o R/A NATIONAL REGISTERED AGENTS, INC.OF NEVADA

11

311 S Division Street

12

Carson City, Nevada 89703

13
14
15
16

Dated: _7 / 14 / 15_____

17
18
19
20
21

/s/ _Hernandez_____

22
23
24
25
26
27
28

**COMPLAINT FOR DAMAGES**